Elizabeth A. Skane, Esq. (Bar No. 7181)
eskane@skanemills.com
Sarai L. Brown, Esq. (Bar No. 11067)
sbrown@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
SKANE MILLS LLP
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144
(702) 363-2535 / Fax (702) 363-2534
Attorneys for Movant,
*The Mountain Church and Precedent Properties, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**ACTON ACADEMY RED ROCK, LLC,**<br><br>Debtor. | Case No. 26-13991-mkn<br>Chapter 11<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Hearing Date: ____________<br>Hearing Time: ____________ |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The Mountain Church and Precedent Properties, LLC (collectively, the "Landlord"), by and through its counsel of record, Skane Mills LLP, hereby moves this Court pursuant to 11 U.S.C. § 362(d)(1) for an order granting relief from the automatic stay to permit the Landlord to exercise its rights and remedies under applicable non-bankruptcy law with respect to the real property located at 9501 Hillwood Drive, Suite 300, Las Vegas, Nevada 89134 (the "Premises"). This Motion is made on the grounds that cause exists for relief from the stay based on the Debtor's failure to pay full, timely post-petition rent under the Lease and the resulting lack of adequate protection of the Landlord's interest in the Premises.

This Motion is based upon the following memorandum of points and authorities, the Affidavit of Samuel Goulet filed concurrently herewith, the pleadings and papers on file in this

case, the certification of counsel under Local Rule 4001(a)(2) set forth below, and such other evidence and argument as may be presented at the hearing on this matter.

## I. INTRODUCTION

Acton Academy Red Rock, LLC (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 26, 2026 to halt a pending eviction. The Landlord is the owner and lessor of the Premises under a written commercial lease dated September 11, 2025 (the "Lease"), which obligates the Debtor to pay monthly rent of $20,294.47, due on the first day of each month, without demand, counterclaim, or setoff.

Since the petition date, the Debtor has not paid its post-petition rent in full or when due. The Debtor has tendered two partial payments — $15,000.00, received August 7, 2026, which the Landlord applied to the July 2026 installment, and $17,200.00, received after the close of business on August 12, 2026, which the Landlord applied to the August 2026 installment — each under an express reservation of rights. Both payments were late and insufficient, and the Debtor has purported to reduce its ongoing rent by unilateral setoffs the Landlord has rejected. After application of $6,000.00 in credits from an authorized third-party occupant and the Debtor's two partial payments totaling $32,200.00, the Debtor owes $2,388.94 in unpaid post-petition rent for July and August 2026, exclusive of late charges accruing under the Lease. Neither post-petition installment has been paid in full, nor was the August 12, 2026 payment itself both late and short of the amount due. The Debtor's failure to perform its post-petition obligations under the Lease constitutes cause for relief from the automatic stay under 11 U.S.C. § 362(d)(1). The Landlord seeks relief from the stay to pursue its state-law remedies, including eviction and recovery of possession of the Premises.

## II. STATEMENT OF FACTS

1. On September 11, 2025, the Landlord and the Debtor entered into the Lease for the Premises located at 9501 Hillwood Drive, Suite 300, Las Vegas, Nevada 89134. (Goulet Aff. ¶¶ 3–4.)

///

///

2. The Lease requires the Debtor to pay monthly rent of $20,294.47, consisting of base rent of $16,100.70 and common-area maintenance (CAM) charges of $4,193.77, due on the first (1st) day of each month, without demand, counterclaim, or setoff. (Goulet Aff. ¶ 5.)

3. The Debtor's post-petition default follows a documented history of chronic pre-petition non-payment. Per the Landlord's account statement dated June 3, 2026, the Debtor had been billed $217,461.25 in rent, CAM charges, late fees, and an unpaid security deposit, against which the Debtor had paid only $90,988.00, leaving a balance of $126,473.25. In no month from the September 11, 2025 commencement through the petition date did the Debtor pay the full monthly rent when due. The pre-petition arrears are recited solely to demonstrate the Debtor's continuing pattern of non-payment and its inability to perform under the Lease, and not as grounds to collect the pre-petition debt through this Motion; the Landlord has asserted its pre-petition claim through a proof of claim filed in this case. (Goulet Aff. ¶¶ 8–10 & Ex. A.)

4. On June 26, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Goulet Aff. ¶ 11.)

5. The rent installment due July 1, 2026 was the first rent obligation to come due after the petition date. Payments of $4,800.00 (applied to July) and $1,200.00 (applied to August) were received from an authorized third-party occupant and credited to the Debtor's account. The Debtor made no payment of its own on either installment when due. (Goulet Aff. ¶ 12.)

6. On August 7, 2026, the Debtor tendered a partial payment of $15,000.00, which the Landlord applied to the July 2026 installment under an express reservation of rights. After application of the $4,800.00 credit and the $15,000.00 payment, $494.47 remains unpaid on the July 2026 installment not included late fees. (Goulet Aff. ¶ 13.)

7. The August 2026 installment, net of the $1,200.00 credit, is $19,094.47. On August 12, 2026, after the close of business, the Debtor tendered a second partial payment of $17,200.00, which the Landlord applied to the August 2026 installment under an express reservation of rights. After application of that payment, $1,894.47 remains unpaid on the August 2026 installment. Together with the $494.47 remaining unpaid on the July 2026 installment, the total unpaid post-

petition rent is $2,388.94, exclusive of late charges accruing under the Lease at ten percent (10%) of each unpaid installment. (Goulet Aff. ¶¶ 13–14 & Ex. C.)

8. The Landlord, through counsel, demanded payment of the post-petition rent in writing on July 22, 2026, and again on August 2, 2026, following assurances of payment made by the Debtor during a telephone call on July 30, 2026 that were not honored. By letter dated August 5, 2026, the Landlord rejected the Debtor's asserted setoffs and advised that it intended to seek relief from the automatic stay absent a cure. By letter dated August 10, 2026, the Landlord acknowledged the $15,000.00 partial payment, identified the balance remaining, and reserved all rights. Upon the Debtor's second partial payment of $17,200.00, received August 12, 2026, the Landlord again reserved all of its rights in writing. (Goulet Aff. ¶ 15 & Ex. B.)

9. The Debtor has not cured the post-petition rent default and has not provided the Landlord with any adequate protection. (Goulet Aff. ¶ 16.)

10. The Debtor has not assumed or rejected the Lease pursuant to 11 U.S.C. § 365, and the deadline to assume or reject under 11 U.S.C. § 365(d)(4) has not yet expired.

11. The Landlord's ability to receive rental income from the Premises is essential to its business and financial obligations, including property taxes, insurance, maintenance, debt service, and common-area operating expenses for the Premises. (Goulet Aff. ¶ 17.)

## III. LEGAL STANDARD

Section 362(d)(1) of the Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). What constitutes cause for relief from the automatic stay is decided on a case-by-case basis. *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 736 (Bankr. C.D. Cal. 2015).

To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that cause exists under section 362(d)(1). *Dangcil v. JPMorgan Chase Bank, N.A. (In re Dangcil)*, 2017 Bankr. LEXIS 760, at *14–15 (B.A.P. 9th Cir. 2017). Once a prima facie case is established, the burden shifts to the debtor to show that relief from the stay is unwarranted. *Id*. If the movant fails to meet its initial burden to demonstrate cause, relief should be denied. *Id*.

Although the term "cause" is not defined in the Bankruptcy Code, courts have held that a debtor's failure to pay rent constitutes cause to lift the automatic stay. *In re Benton*, 662 B.R. 517, 521 (Bankr. S.D.N.Y. 2024). The right to timely payment of rents constitutes an interest in property entitled to adequate protection, and courts may lift the automatic stay for the failure to pay post-petition rent. *Id*. The lack of adequate protection is but one example of cause for relief under section 362(d)(1). *In re Risher*, 677 B.R. 691, 695 (Bankr. D. Minn. 2026). A debtor's persistent failure to make payments, standing alone, may constitute adequate cause for relief. *In re Aguilar*, 2014 Bankr. LEXIS 4982, at *10 (B.A.P. 9th Cir. 2014). The decision whether to grant relief is within the broad discretion of the bankruptcy court. *In re Am. Spectrum Realty, Inc*., 540 B.R. at 736.

## IV. ARGUMENT

### A. The Debtor's Failure to Pay Full, Timely Post-Petition Rent Constitutes Cause for Relief from the Automatic Stay.

Under 11 U.S.C. § 365(d)(3), the Debtor must timely perform all obligations arising under the Lease from and after the petition date, including payment of the full monthly rent when due, pending assumption or rejection. The Debtor has not done so. Its only post-petition payments — two partial tenders, $15,000.00 received August 7, 2026 and $17,200.00 received after the close of business on August 12, 2026, each made after the applicable due date and after the Landlord's repeated written demands — were both late and insufficient, and were accompanied by the Debtor's insistence on unilateral setoffs the Lease prohibits and the Landlord has rejected. Courts consistently recognize that the failure to pay post-petition rent in full and on time constitutes cause warranting stay relief.

In *In re Benton*, the court granted relief from the automatic stay where the debtor had been in arrears and owed unpaid rent, finding that such non-payment constituted cause under section 362(d)(1). *In re Benton*, 662 B.R. at 522. A partial or late tender does not cure the default. In In re Ellis, the Bankruptcy Appellate Panel held that failure to make required payments constitutes cause to grant relief from the automatic stay under 11 U.S.C. § 362(d)(1), reasoning that late or erratic payments — even with interest — are often not of equal practical value to one who relies on a

steady income stream. *In re Ellis*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985). That reasoning applies directly here: the Debtor's two late, partial payments, made under disputed terms and unaccompanied by any commitment to pay the full contractual rent going forward, do not restore the Landlord to the position for which it bargained.

The Ninth Circuit Bankruptcy Appellate Panel has likewise held that a debtor's persistent failure to make payments, standing alone, may constitute adequate cause for relief from the stay. *In re Aguilar*, 2014 Bankr. LEXIS 4982, at *10–11. Here, after crediting the $6,000.00 in third-party credits and the Debtor's two partial payments totaling $32,200.00, the Debtor still owes $2,388.94 in unpaid post-petition rent for July and August 2026, exclusive of accruing late charges; neither post-petition installment has been paid in full or on time; and the Debtor's August 12, 2026 payment was itself both late and short of the amount then due. This establishes a prima facie case for cause under section 362(d)(1).

The Debtor's post-petition non-payment is not an isolated lapse but the continuation of a chronic pattern. As reflected in the Landlord's pre-petition account statement, the Debtor paid only $90,988.00 against $217,461.25 in charges over the course of the tenancy and never once paid a full month's rent when due. This history confirms that the Debtor is unable or unwilling to perform under the Lease and that the Landlord cannot be adequately protected by the mere prospect of future payment. *In re Aguilar*, 2014 Bankr. LEXIS 4982, at *10.

**B. The Landlord's Right to Timely Payment of Rent Is Not Adequately Protected.**

The Landlord's right to receive timely rent constitutes an interest in property entitled to adequate protection, and courts may lift the automatic stay for the failure to pay post-petition rent. *In re Benton*, 662 B.R. at 522. The automatic stay under section 362(a) prohibits acts to obtain possession or control of estate property, but section 362(d)(1) authorizes relief for cause, including the lack of adequate protection. *In re Dangcil*, 2017 Bankr. LEXIS 760, at *14.

Here, the Debtor has provided no adequate protection for its ongoing non-payment. The Debtor's late, partial payments do not keep pace with the rent and late charges that accrue each month; no post-petition installment has been paid in full or on time; and the payments were tendered on the Debtor's own disputed terms rather than as full and timely performance. The

Landlord depends on rental income from the Premises to cover property taxes, insurance, maintenance, debt service, and operating expenses, and the Debtor's continued shortfall deprives the Landlord of that income without compensation or protection. The lack of adequate protection independently supports relief from the stay.

**C. The Burden Has Shifted to the Debtor to Demonstrate That Relief Is Unwarranted.**

The Landlord has established a prima facie case that cause exists based on the Debtor's failure to pay full, timely post-petition rent and the resulting lack of adequate protection. The burden therefore shifts to the Debtor to show that relief should be denied, and the Debtor bears the burden on all issues except the Landlord's equity in the property. *In re Dangcil*, 2017 Bankr. LEXIS 760, at *15. The Debtor has not proposed or confirmed a plan that would cure the arrears, has not offered adequate protection, and has not tendered full, timely rent. On this record, relief from the stay is warranted.

**D. Relief from Stay Is Appropriate to Allow the Landlord to Exercise Its State-Law Remedies.**

Section 362(d)(1) directs the court to grant relief upon a showing of cause. *Truebro, Inc. v. Plumberex Specialty Prods., Inc.* (*In re Plumberex Specialty Prods., Inc.*), 311 B.R. 551, 556 (Bankr. C.D. Cal. 2004). Courts in the Ninth Circuit grant relief under section 362(d)(1) to permit landlord-tenant disputes to be resolved in their proper forum where doing so will not prejudice the estate. *Id.*; *see Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.)*, 781 F.2d 159, 163 (9th Cir. 1986). Granting relief will permit the Landlord to pursue its state-law remedies for non-payment, including unlawful detainer proceedings under Nevada law, which are properly heard in state court and will not prejudice the estate, as the Debtor has shown no ability or intention to cure the post-petition arrears.

**V. CERTIFICATION OF GOOD-FAITH EFFORT TO RESOLVE (LR 4001(a)(2))**

Pursuant to Local Rule 4001(a)(2), counsel for the Landlord certifies that, before filing this Motion, the Landlord made a good-faith effort to resolve the Debtor's post-petition default without the need for motion practice. The Landlord, through counsel, served written demands for payment of post-petition rent on July 22, 2026 and August 2, 2026; conferred with the Debtor by telephone

on July 30, 2026, during which the Debtor gave assurances of payment that were not honored; advised the Debtor by letter dated August 5, 2026 that the asserted setoffs were rejected and that the Landlord intended to seek relief from the automatic stay absent a cure; by letter dated August 10, 2026, acknowledged the Debtor's $15,000.00 partial payment, identified the balance remaining, and reserved all rights; and, upon the Debtor's second partial payment of $17,200.00 received August 12, 2026, again reserved all of the Landlord's rights in writing. True and correct copies of this correspondence are attached collectively as **Exhibit B**. Despite these efforts, the parties have not reached a resolution, the post-petition default remains uncured, and no adequate protection has been offered.

## VI. CONCLUSION AND PRAYER FOR RELIEF

The Debtor's failure to pay full, timely post-petition rent constitutes cause for relief from the automatic stay under 11 U.S.C. § 362(d)(1). The Landlord has established a prima facie case for stay relief based on non-payment and the lack of adequate protection, and the Debtor cannot meet its burden to show that relief is unwarranted. Accordingly, the Landlord respectfully requests that the Court enter an order:

1. Granting the Landlord relief from the automatic stay imposed by 11 U.S.C. § 362(a) to permit the Landlord to exercise all rights and remedies available under applicable non-bankruptcy law with respect to the Premises, including commencing or continuing eviction or unlawful detainer proceedings against the Debtor in state court, obtaining possession of the Premises, and enforcing all other rights and remedies under the Lease and Nevada law;

2. Waiving the fourteen (14)-day stay of an order granting relief under Federal Rule of Bankruptcy Procedure 4001(a)(4) so that the Landlord may proceed immediately upon entry of the order; and

///

///

///

3. Granting such other and further relief as the Court deems just and proper.

DATED this 13th day of August, 2026.

SKANE MILLS LLP

*/s/ Elizabeth C. Spaur*

By: ______________________________

Elizabeth A. Skane, Esq. (Bar No. 7181)
eskane@skanemills.com
Sarai L. Brown, Esq. (Bar No. 11067)
sbrown@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
1120 N. Town Center Dr., Ste. 200
Las Vegas, NV 89144
Attorneys for Movant, *The Mountain Church and Precedent Properties, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Skane Mills LLP, and that on the 13th day of August, 2026, I caused a true and correct copy of the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** to be filed and served as follows:

[X] By ECF Notification: Pursuant to the Court's CM/ECF electronic filing system, upon all parties and registered CM/ECF users appearing in this case; and

[X] By United States Mail: By depositing a true and correct copy in the United States Mail, first-class postage prepaid, addressed to the following:

Corey B. Beck, Esq.
The Law Offices of Corey B. Beck, Esq.
425 South Sixth Street
Las Vegas, Nevada 89101
Attorney for the Debtor

Acton Academy Red Rock, LLC
9501 Hillwood Drive, Suite 300
Las Vegas, Nevada 89134
Debtor

Office of the United States Trustee
c/o Carlos R. Hernandez-Vivoni
300 Las Vegas Boulevard South, Suite 4300
Las Vegas, Nevada 89101

Bamboo HR
c/o Caine & Weiner
Attn: Yvette Resendiz
5805 Sepulveda Blvd, 4th FL
Van Nuys, CA 91411

U.S. Small Business Administration,
Office of General Counsel,
312 N. Spring St., 5th Fl.,
Los Angeles, CA 90012

Department of Justice
Office of the U.S. Trustee
600 Las Vegas Blvd.
Las Vegas, NV 89101

Internal Revenue Service
Attn: Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101

Internal Revenue Service
Stop 5028
110 City Parkway
Las Vegas, NV 89106

Department of Motor Vehicles
Records Section
555 Wright Way
Carson City, NV 89711

Nevada DETR
500 E. Third St.
Carson City, NV 89701

Nevada Department of Taxation
555 E. Washington Avenue, Suite 1300
Bankruptcy Section
Las Vegas, NV 89101

Nevada Department of Taxation
Bankruptcy Section
700 E. Warm Springs Rd., Ste. 200
Las Vegas, NV 89119

Nevada Labor Commissioner
3300 W. Sahara Ave., Ste. 225
Las Vegas, NV 89102

Small Business Administration
312 N. Spring St., 5th Fl.
Los Angeles, CA 90012

/s/ Tamara Conway

An employee of Skane Mills LLP

# EXHIBIT A

MTN CHURCH

*June 3, 2026*

## Acton Academy

**Security deposit due $10,000.00**
Rent & Cams due: $195,500.39
***LATE FEES (10%)*** ***$8903.10***
September – January
***LATE FEES (10%)*** ***$1,037.35***
March
***LATE FEES (10%)*** ***$2020.41***
April

Total due: $217,461.25

| Month | Year | #100 Monthly Base Rent | Monthly CAMS | Monthly Total |
|---|---|---|---|---|
| 1 | Sep-25 | $ 10,197.11 | $ 2,656.05 | $ 12,853.16 |
| 2 | Oct-25 | $ 16,100.70 | $ 4,193.77 | $ 20,294.47 |
| 3 | Nov-25 | $ 16,100.70 | $ 4,193.77 | $ 20,294.47 |
| 4 | Dec-25 | $ 16,100.70 | $ 4,193.77 | $ 20,294.47 |
| 5 | Jan-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 6 | Feb-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 7 | Mar-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 8 | Apr-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 9 | May-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 10 | Jun-26 | $16,100.70 | $4,193.77 | $20,294.47 |

Total payments received:

| | |
|---|---|
| 10.7.25 | $16,000.00 |
| 10.10.25 | $8,118.00 |
| 12.5.25 | $8000.00 |
| 12.8.25 | $2000.00 |
| 12.9.25 | $2000.00 |
| 12.11.25 | $2000.00 |
| 1.28.26 | $5000.00 |
| 2.2.26 | $2500.00 |
| 2.2.26 | $3300.00 |
| 2.2.26 | $1250.00 |
| 2.3.26 | $3500.00 |
| 2.4.26 | $5000.00 |
| 3.2.26 | $3620.00 |
| 3.3.26 | $6300.00 |
| 4.14.26 | $2300.00 |
| 5.7.26 | $7900.00 |
| 5.11.26 | $7900.00 |
| 5.15.26 | $4300.00 |

**Total amount received - $90,988.00+**

**TOTAL BALANCE DUE = $126,473.25**

# EXHIBIT B

skane mills

LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

July 22, 2026

***Via E-Mail Only***
Corey B. Beck, Esq.
The Law Offices of Corey B. Beck, Esq.
425 South Sixth Street
Las Vegas, Nevada 89101
Email: becklegal@yahoo.com

**Re:** **Debtor / Tenant:** Acton Academy Red Rock, LLC
**Bankruptcy Case No.:** 26-13991 (Chapter 11, U.S. Bankruptcy Court, District of Nevada)
**Premises:** Suite #300, 9501 Hillwood Drive, Las Vegas, NV 89134
**Subject:** Response to your July 17, 2026 letter regarding "Recommencing Payment of Rent and Adjustments to Monthly Payment"

Dear Mr. Beck:

This firm represents The MNTN Church / City on a Hill, LLC and Precedent Properties, LLC, together the landlord (collectively, "Landlord") under the written lease for Suite #300 at 9501 Hillwood Drive, Las Vegas, Nevada (the "Lease") with your client, Acton Academy Red Rock, LLC (the "Debtor" or "Tenant"). We write in response to your letter dated July 17, 2026 (the "July 17 Letter"), in which the Debtor proposes to recommence rent while unilaterally reducing the monthly payment from the contractual amount to $7,418.71. Landlord does not agree to the proposed reduction, and this letter sets forth Landlord's position and reservation of rights.

## 1. The Debtor must timely pay the full contractual rent under 11 U.S.C. § 365(d)(3).

The Lease has neither been assumed nor rejected. Until it is, Section 365(d)(3) of the Bankruptcy Code requires the Debtor to timely perform *all* of its obligations under the Lease as they come due, at the full contractual amount, without reduction. The current monthly obligation is base rent of $16,100.70 plus CAM/operating expenses of $4,193.77, for a total of $20,294.47 per month. Under Section 7 of the Lease, each installment is due in advance on the first day of each calendar month. (The July 17 Letter refers to a due date of the 25th and states a total of $20,297.47; the Lease requires payment on the first of the month, and the $20,297.47 figure does not reconcile to the Lease, overstating the correct sum by $3.00.) The installment that came due on July 1, 2026 — the first installment following the June 26, 2026 petition — remains unpaid and is now delinquent. As set forth below, after application of a voluntary credit the outstanding balance for July is $15,494.47; that amount must be paid immediately, and the full contractual

installment of $20,294.47 is due on the first day of each month thereafter, until the Lease is assumed or rejected.

**2. The Debtor may not self-apply disputed offsets, credits, or abatements against its Section 365(d)(3) rent.**

Independently of the Bankruptcy Code, the Lease itself forecloses the proposed reductions. Section 7 (Base Rental) requires that rent be paid *"in advance and without demand, counterclaim, or set-off."* The Debtor therefore has no contractual right to deduct the asserted offsets from its rent. Landlord disputes each of the three reductions as to both entitlement and amount:

> **$4,000.00 (shared-use restriction).** The Lease does not grant the Tenant any right to use the common areas. The Demised Premises is Suite #300 (Lease § 1.4 and Exhibit A); the Tenant's use is limited to the Premises (§ 11, Use of Premises); and Landlord's covenant of quiet enjoyment runs to the Premises, not to the common areas. The Lease further reserves to Landlord the right to "diminish the common areas" and provides that "no such reduction shall terminate or modify this Lease or Tenant's obligations hereunder." A restriction on common-area use therefore neither reduces the Demised Premises nor entitles the Tenant to any rent reduction.
>
> **$2,875.00 (Sunday use).** The Lease's Rules and Regulations reserve to Landlord the right to "close and lock the Building on Saturdays, Sundays, and legal holidays." The church's Sunday use is consistent with the Lease and is not a compensable deprivation of the tenancy.
>
> **$6,000.00 (JCC payments).** Landlord acknowledges that it received payments from JCC in connection with usage of the Demised Premises in July 2026 in the sum of $4,800. It is the understanding of my client that, in violation of the Lease, the Debtor subleased space to JCC (among other entities). As the Debtor is severely in default of the Lease, Landlord agreed to accept these payments from JCC directly. Landlord's receipt and application of the JCC payments is made solely in mitigation of amounts the Debtor owes, without waiver of, and without consent to, the unauthorized sublease, and without prejudice to Landlord's demand that all third-party use of the Demised Premises cease. While not legally obligated to apply a set-off under the Lease, Landlord is willing to apply this credit for the Debtor's benefit, reducing the outstanding July balance to $15,494.47, which is now twenty-one (21) days overdue.

The Lease permits rent abatement only in narrowly defined circumstances — a service interruption lasting more than five consecutive days and within Landlord's control, and casualty rendering the Premises unusable — none of which is present here. Any claimed offset, setoff, recoupment, or abatement must be pursued through the mechanism provided in the Lease or by order of the Bankruptcy Court, not by unilateral deduction. The CAM/operating-expense component is a fixed pass-through not subject to these asserted use offsets, and the reductions as calculated in the July 17 Letter do not internally reconcile.

If the Debtor believes it holds a legitimate, documented abatement or credit claim, Landlord will review it on the merits upon receipt of supporting documentation, and any agreed adjustment can be memorialized through the Lease's terms or a Court-approved stipulation.

Landlord will not, however, accept a self-calculated reduction in lieu of the rent that Section 365(d)(3) requires.

**3. Third-party use of the Premises — unauthorized subletting must cease immediately.**

It has come to Landlord's attention that multiple entities are paying the Tenant for the use of the Demised Premises. Section 15 of the Lease provides that "Tenant shall not sublease or sublet any of this space without the full and written approval and consent from the Landlord." The Tenant has neither sought nor obtained Landlord's written consent to any sublease, license, or other occupancy or use arrangement for the Demised Premises. Any such arrangement is a material breach of the Lease under Sections 15 and 18. Landlord demands that the Tenant, effective immediately, (i) cease permitting any third party to use or occupy the Demised Premises, whether for payment or otherwise; (ii) identify in writing every such arrangement, the entities involved, the amounts received, and the dates; and (iii) account to Landlord for all sums the Tenant has collected in connection with any third-party use of the Demised Premises. Landlord reserves all rights and remedies arising from this unauthorized subletting.

**4. Demand and reservation of rights.**

Landlord demands immediate payment of the delinquent July balance of $15,494.47 (the $20,294.47 installment that came due on July 1, 2026, less the $4,800 voluntary credit described above), and timely payment of the full contractual amount of $20,294.47 on the first day of each month thereafter, pending assumption or rejection of the Lease. Should the Debtor tender less than the full contractual amount, Landlord will treat the shortfall as a default of the Debtor's Section 365(d)(3) obligations, giving rise to an administrative-priority claim and constituting cause for relief from the automatic stay and/or a motion to compel payment, for which Landlord reserves the right to seek its attorneys' fees and costs.

Nothing in this letter, and no acceptance of any partial payment, shall constitute (i) a waiver of any of Landlord's rights or remedies, (ii) except for the $4,800 credit voluntarily applied herein, an agreement to any reduction, offset, or abatement, (iii) an assumption of the Lease or a consent to its assumption, or (iv) a waiver, release, or subordination of Landlord's claims for pre-petition arrears, its rights against the guarantor, Amy Novak, under the personal guaranty, or its rights with respect to the assumption or rejection of the Lease. Landlord expressly reserves all rights and remedies at law, in equity, and under the Bankruptcy Code, the Lease, and the guaranty.

We are available to meet and confer at your convenience. Please direct all further communications regarding this matter to the undersigned.

Very truly yours,

Sarai L. Brown, Esq.
Elizabeth C. Spaur, Esq.
SKANE MILLS LLP

skane mills

LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

July 22, 2026

***Via E-Mail Only***
Corey B. Beck, Esq.
The Law Offices of Corey B. Beck, Esq.
425 South Sixth Street
Las Vegas, Nevada 89101
Email: becklegal@yahoo.com

**Re:** **Debtor / Tenant:** Acton Academy Red Rock, LLC
**Bankruptcy Case No.:** 26-13991 (Chapter 11, U.S. Bankruptcy Court, District of Nevada)
**Premises:** Suite #300, 9501 Hillwood Drive, Las Vegas, NV 89134

Dear Mr. Beck:

We write further to our July 22, 2026 letter to memorialize the Debtor's continued failure to pay post-petition rent under the Lease — now for two consecutive months — and to advise you of Landlord's enforcement action against a third party occupying the Premises without authorization.

The Debtor has still paid no post-petition rent, notwithstanding its July 30 assurance. Your June 26, 2026 notice represented that the Debtor "will commence ongoing rent payments starting July 2026," and your July 17, 2026 letter stated that the Debtor would tender its first ongoing rent payment "next week." Most recently, during our telephone call on July 30, 2026, assurances were again made that July's payment would be made. As of the date of this letter — August 2, 2026 — Landlord has received no post-petition rent payment whatsoever. The installment that came due on July 1, 2026, the first installment following the June 26, 2026 petition, remains wholly unpaid and is now thirty-two (32) days overdue.

The August 1, 2026 installment is now also due and unpaid. Under Lease § 7, rent is due in advance on the first day of each month, without demand, at the full contractual amount of $20,294.47 (base rent $16,100.70 plus CAM $4,193.77). The August 2026 installment of $20,294.47 came due on August 1, 2026 and has not been paid. The Debtor is therefore now delinquent on two consecutive post-petition months.

After application of the $4,800.00 voluntary JCC credit described in our July 22 letter, the outstanding balance for July is $15,494.47. For August, Landlord has received $1,200.00 from JCC for the first week of the month — JCC being an occupant whose use of the Premises is with Landlord's knowledge and consent — which Landlord has agreed to offset against the amount of August rent owed; the unpaid August installment of $20,294.47 is thereby reduced to $19,094.47.

The total post-petition rent now due and owing is $34,588.94, exclusive of accruing late charges and other amounts recoverable under the Lease.

Until the Lease is assumed or rejected, § 365(d)(3) obligates the Debtor to timely perform all of its obligations under the Lease as they come due, at the full contractual amount and without reduction. The Debtor's non-payment is not excused by any asserted offset, which the Lease forecloses and which in any event may not be self-applied, as set forth in our July 22 letter.

Additionally, Landlord has determined that Playbloom, a separate entity operated by Amy Novak, has been using and occupying the Premises without Landlord's knowledge or written consent, in violation of Lease §§ 11 and 15. Playbloom is not a party to the Lease and has no right of occupancy as an unauthorized occupant of the Premises. Landlord is therefore trespassing Playbloom from the property effective immediately. A formal notice to that effect is being posted on the property and served on Playbloom at its registered address, care of Amy Novak. We provide this information as a courtesy given the interrelationship between the Debtor's principal and Playbloom's principal; it does not waive, and Landlord expressly reserves, all rights and remedies arising from the unauthorized occupancy, including its demand for an accounting and turnover of any subtenant or occupancy income as adequate protection.

The unpaid post-petition rent is entitled to administrative-expense priority under § 365(d)(3) and § 503(b). The Debtor's ongoing failure to pay — now spanning two consecutive months — also constitutes cause for relief from the automatic stay under § 362(d)(1), and bears directly on the Debtor's ability to assume the Lease under § 365(b), which requires cure of all defaults and adequate assurance of future performance.

Landlord demands (a) immediate payment of the $34,588.94 now outstanding for July and August; and (b) written confirmation that the full contractual installment of $20,294.47 will be paid on the first day of each month hereafter, pending assumption or rejection of the Lease. Please respond in writing no later than August 6, 2026.

Nothing in this letter waives, and Landlord expressly reserves, all of its rights, claims, defenses, and remedies — including the right to seek relief from the automatic stay, to compel payment under § 365(d)(3), to object to any assumption of the Lease, to assert an administrative-expense claim, to enforce against unauthorized occupants of the Premises, and to pursue the guarantor — together with all positions set forth in our July 22 and July 29, 2026 letters.

Very truly yours,

*/s/ Sarai L. Brown*

Sarai L. Brown, Esq.
SKANE MILLS LLP

skane mills

LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

August 5, 2026

***Via E-Mail Only***
Corey B. Beck, Esq.
The Law Offices of Corey B. Beck, Esq.
425 South Sixth Street
Las Vegas, Nevada 89101
Email: becklegal@yahoo.com

**Re:** **Debtor / Tenant:** Acton Academy Red Rock, LLC
**Bankruptcy Case No.:** 26-13991 (Chapter 11, U.S. Bankruptcy Court, District of Nevada)
**Premises:** Suite #300, 9501 Hillwood Drive, Las Vegas, NV 89134

Dear Mr. Beck:

Thank you for your email. We appreciate that you have met with your client, and we look forward to your client's substantive response to the Landlord's letter. In the meantime, we respond to the two points you raise.

**1. Sunday Use and the Claimed $2,380 "Offset"**

The Landlord does not agree that any rent reducti on or offset is proper, and none will be recognized.

Your position misreads Rule 12 of the Lease's Rules and Regulations. Rule 12 provides: "Landlord reserves the right to close and lock the Building on Saturdays, Sundays, and legal holidays and on other days between the hours of 7:00 P.M. and 7:00 A.M. of the following day." Rule 12 does the opposite of what your email suggests — it expressly reserves to the Landlord the right to close the Building on Sundays. The Landlord's use of the Building on a Sunday therefore deprives the Tenant of nothing to which it is entitled.

Nor is there any contractual basis for the $595-per-week figure or for any offset. Section 7 of the Lease requires rent to be paid "in advance and without demand, counterclaim, or set -off," and the Rules and Regulations further provide that the Landlord "shall under no circumstances be liable for any reduction of the common areas." The claimed $2 ,380 deduction has no foundation in the Lease.

---

Finally, July 2026 rent is a post-petition obligation that the Debtor must pay in full and on time under 11 U.S.C. § 365(d)(3). The Debtor may not unilaterally reduce or offset that obligation, and the purported offset neither cures nor excuses the Debtor's ongoing post-petition default.

**2. Notice to Playbloom Therapy Collaborative, LLC**

The "licensee versus subtenant" distinction you draw does not make the Landlord's notice improper. The Landlord is the owner of the Premises. No third party — whether characterized as a licensee, an independent contractor, or a subtenant — may occupy the Premises or operate its business there without the Landlord's consent. The Tenant cannot confer on Playbloom rights of occupancy or use that the Tenant does not itself hold and that Section 15 of the Lease expressly conditions on the Landlord's "full and written approval and consent." The Landlord has given no such consent as to Playbloom.

Your statement that Playbloom does "not office at [the] premises" is also inconsistent with the facts. On August 2, 2026, Playbloom Therapy's signage was posted at the suite— including a waiting-room sign, a "session in progress" notice on the suite door, and an interior staff door — reflecting an established, operating presence at the Premises rather than occasional visits. Playbloom Therapy Collaborative, LLC is a Nevada limited liability company, formed July 30, 2025, and owned and managed by Amy Novak.

Indeed, the facts show that this arrangement is a sublease, not a mere license. Playbloom's signage at the Premises, together with statements by Playbloom's own agents that Ms. Novak is collecting rent in connection with the use of Suite 300, demonstrate that Ms. Novak has taken on the role of a sublandlord with respect to space within the Premises. The suggestion that Playbloom is merely "a licensee who works with the students of Acton" is unsupported by the facts and is squarely contradicted by Playbloom's collection of rent for use of the space. An unauthorized sublease of this kind violates Section 15 of the Lease, which prohibits the Tenant from subletting "without the full and written approval and consent from the Landlord" — consent the Landlord has never given.

We note two further points. First, the Landlord's notice is directed solely to Playbloom, a non-debtor third party; it seeks no action against the Debtor or its leasehold and does not implicate the automatic stay. Second, you represent the Debtor, not Playbloom — to the extent Playbloom wishes to assert a right to remain, it may do so directly, and the Debtor's characterization of Playbloom's status does not bind the Landlord.

Moreover, even accepting your own characterization of Playbloom as an independent contractor providing services rather than a subtenant, its presence still violates the Lease. Rule 11 of the Rules and Regulations provides that the "Tenant shall not employ any service or contractor for services or work to be performed in the Building except as approved by Landlord." On your own description, Playbloom is precisely such a service provider performing services in the Building, and the Landlord has not approved it. Playbloom's occupancy therefore violates the Lease whether it is treated as an unauthorized sublease under Section 15 or as an unapproved service provider under Rule 11 of the Rules and Regulations.

---

Nothing herein concedes that any other third party's occupancy or use of the Premises is authorized. The Landlord's consent, where extended, is specific and has not been given to Playbloom.

**3. Good-Faith Effort to Resolve**

Consistent with Local Rule 4001(a)(2), the Landlord writes in a goodfaith effort to resolve these matters — and in particular the Debtor's outstanding post-petition rent — without the need for a motion for relief from the automatic stay. As of the date of this letter, the Debtor owes $34,588.94 in unpaid post-petition rent for July and August 2026 (net of applied credits), and no adequate protection has been offered. The Landlord remains willing to confer promptly regarding a cure of the post -petition default or other adequate protection acceptable to the Landlord. This letter, together with the Landlord's prior correspondence of July 22, 2026 and August 2, 2026, reflects the Landlord's good -faith attempt to resolve this matter short of motion practice. If the parties are unable to reach a resolution, the Landlord intends to seek relief from the automatic stay and will rely upon this correspondence as evidence of its good -faith efforts under Local Rule 4001(a)(2).

The Landlord reserves all of its rights and remedies under the Lease and applicable law, including as to the outstanding post-petition rent and its request for relief from the automatic stay. We look forward to hearing from you after you have conferred with your client.

Very truly yours,

*/s/ Sarai L. Brown*

Sarai L. Brown, Esq.
SKANE MILLS LLP

| | |
|---|---|
| **From:** | Sarai L. Brown |
| **To:** | corey beck |
| **Cc:** | Yesenia Lutes; Elizabeth Spaur |
| **Subject:** | Acton Academy |
| **Date:** | Monday, August 10, 2026 10:57:00 AM |
| **Attachments:** | image001.png |

Mr. Beck,
I am writing to acknowledge receipt of your client's $15,000.00 payment toward July 2026 rent. While the payment is appreciated, it does not satisfy the amount due, and a balance remains outstanding.

As reflected in our prior correspondence, the July 2026 installment, net of the applied $4,800.00 credit, is $15,494.47, plus a ten percent (10%) late charge of $1,549.42, for a total of $17,043.89. After crediting the $15,000.00 payment, $2,043.89 remains due on the July installment.
The August 2026 installment, net of the applied $1,200.00 credit, is $19,094.47, plus a ten percent (10%) late charge of $1,909.43, for a total of $21,003.90, which remains unpaid. We understand your client intends to tender $15,000.00 toward August rent on August 12, 2026; when received, that payment will likewise be a partial payment and will be applied in accordance with the Lease.

Accordingly, the total post-petition rent presently outstanding is $23,047.79, exclusive of further late charges, interest, attorney's fees, and other amounts that continue to accrue. As previously stated, my client's acceptance of any payment is not, and shall not be construed as, an accord and satisfaction, settlement, compromise, or waiver of any of the Landlord's rights or remedies under the Lease or at law, all of which are expressly reserved, including as to the outstanding post-petition rent.

Separately, it has come to my client's attention that Acton Academy is keeping personal property and possessions in areas outside of its leased Premises — specifically, the second-floor lobby, the kitchen, and the suite formerly occupied by Echo Therapy (Suite 200) and/or front area of the demo space on the first floor. I write to request that these items be removed.

Under the Lease, the Tenant's leasehold is limited to Suite #300. Section 1.4 defines the Demised Premises as "Suite #300 of the building," and Section 3 demises to Tenant only the Demised Premises. Section 11.1 requires that "Tenant shall use and occupy the Premises exclusively for Tenant's use set forth in Section 1.11 hereof and for no other purposes." The common areas and the other suites are not part of the Premises, and nothing in the Lease grants Tenant any right to use, occupy, or store property in them.

The Tenant's placement of property in the common areas is separately prohibited. Section 11.4 provides that "Tenant shall not do nor permit anything to be done in, on, or about the Premises which would in any way obstruct or interfere with the rights of other tenants or occupants of the Building." And Rule 1 of the Rules and Regulations (Exhibit D) states that "Tenant shall not suffer or permit the obstruction of any Common Areas inside & outside of the building including driveways, walkways, and stairways, lobby, hallways, bathrooms, [and] stairwells." The second-floor lobby and kitchen are Common Areas subject to this Rule.

The suite formerly occupied by Echo Therapy (Suite 200) and/or the demoed space on the first floor is separate leased space in which Acton Academy has never held any leasehold, occupancy, or other interest, and in which it has no right to place or store any property.

Accordingly, please direct your client to remove all of its property and possessions from the above referenced areas — returning them to Suite #300 or removing them from the building — no later than the close of business on Wednesday, August 12, 2026. Consistent with Rule 10, please coordinate the timing of any removal with the Landlord so that it may be accomplished in an orderly manner, and kindly confirm that removal will be completed by that date.
Additionally, your client has items stored in a storage container in the parking lot. The storage container is being removed this week and therefore, if your client wants the items contained in it, it needs to be removed by August 12, 2026 or it will be discarded. The code to the container is 1975.

The Landlord reserves all of its rights and remedies under the Lease and applicable law, all of which are expressly reserved.

Kindest Regards,

Sarai

skane mills

Sarai L. Brown, Partner
1120 Town Center Drive, Suite 200, Las Vegas, NV 89144, p: 702-363-2535
sbrown@skanemills.com | skanemills.com
LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

[illegible]

skane mills

LOS ANGELES * SAN DIEGO * SAN FRANCISCO * LAS VEGAS

August 13, 2026

***Via E-Mail Only***
Corey B. Beck, Esq.
The Law Offices of Corey B. Beck, Esq.
425 South Sixth Street
Las Vegas, Nevada 89101
Email: becklegal@yahoo.com

**Re:** **Debtor / Tenant:** Acton Academy Red Rock, LLC
**Bankruptcy Case No.:** 26-13991 (Chapter 11, U.S. Bankruptcy Court, District of Nevada)
**Premises:** Suite #300, 9501 Hillwood Drive, Las Vegas, NV 89134

Dear Mr. Beck:

This letter concerns the payment of $17,200.00 tendered by the Debtor, Acton Academy Red Rock, LLC, after the close of business on August 12, 2026.

The Landlord has applied the $17,200.00 to the Debtor's August 2026 rent installment. The Landlord accepts this payment under an express and full reservation of all of its rights and remedies. The Landlord's acceptance of the payment is not, and shall not be construed as, a waiver of the Debtor's post-petition defaults under the Lease or under 11 U.S.C. § 365(d)(3), an accord and satisfaction, or an agreement to any offset, credit, or reduction of rent asserted by the Debtor, all of which the Landlord continues to reject.

The payment does not cure the Debtor's post-petition default. After application of the $1,200.00 August credit and the $17,200.00 payment, $1,894.47 remains unpaid on the August 2026 installment; together with $494.47 remaining unpaid on the July 2026 installment, the Debtor owes $2,388.94 in unpaid post-petition rent for July and August 2026, exclusive of late charges accruing under the Lease at ten percent (10%) of each unpaid installment. The Debtor's rent obligations remain due in full and on time, without demand, counterclaim, or setoff, under Section 7 of the Lease and 11 U.S.C. § 365(d)(3).

The Landlord reserves all of its rights and remedies under the Lease and applicable law, including its request for relief from the automatic stay based on the Debtor's continuing post-petition default and the lack of adequate protection. This letter, together with the Landlord's prior

correspondence of July 22, 2026, August 2, 2026, August 5, 2026, and August 10, 2026, reflects the Landlord's continued good-faith efforts to resolve this matter under Local Rule 4001(a)(2).

Please direct any questions to the undersigned.

Very truly yours,

*/s/ Sarai L. Brown*

Sarai L. Brown, Esq.
SKANE MILLS LLP

# EXHIBIT C

MTN
CHURCH

*August 10, 2026*

# PAST DUE

**Acton Academy – Red Rock**
c/o Amy Novak

Security deposit returned $10,000.00

Rent & Cams **$236,089.13**
***LATE FEES (10%)*** ***$8903.10***
September – January
***LATE FEES (10%)*** ***$1,037.30***
March
***LATE FEES (10%)*** ***$2020.41***
April
***LATE FEES (10%)*** ***$1547.42***
July
***LATE FEES (10%)*** ***$1909.43***
August

**Total due: $261,506.79**

Payments received:

| | |
|---|---|
| 10.7.25 | $16,000.00 |
| 10.10.25 | $8,118.00 |
| 12.5.25 | $8000.00 |
| 12.8.25 | $2000.00 |
| 12.9.25 | $2000.00 |
| 12.11.25 | $2000.00 |
| 1.28.26 | $5000.00 |
| 2.2.26 | $2500.00 |
| 2.2.26 | $3300.00 |
| 2.2.26 | $1250.00 |
| 2.3.26 | $3500.00 |
| 2.4.26 | $5000.00 |
| 3.2.26 | $3620.00 |
| 3.3.26 | $6300.00 |
| 4.14.26 | $2300.00 |
| 5.7.26 | $7900.00 |
| 5.11.26 | $7900.00 |
| 5.15.26 | $4300.00 |
| *7.1.2026* | *$4800.00* *Camp Credit* |
| *8.1.2026* | *$1200.00* *Camp Credit* |
| 8.7.2026 | $15,000.00 |

**Total payments received - $111,988.00**

**TOTAL BALANCE DUE = $149,518.79**

| Month | Year | #100 Monthly Base Rent | Monthly CAMS | Monthly Total |
|---|---|---|---|---|
| 1 | Sep-25 | $16,100.70 | $4,193.77 | $20,294.47 |
| 2 | Oct-25 | $16,100.70 | $4,193.77 | $20,294.47 |
| 3 | Nov-25 | $16,100.70 | $4,193.77 | $20,294.47 |
| 4 | Dec-25 | $16,100.70 | $4,193.77 | $20,294.47 |
| 5 | Jan-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 6 | Feb-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 7 | Mar-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 8 | Apr-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 9 | May-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 10 | Jun-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 11 | Jul-26 | $16,100.70 | $4,193.77 | $20,294.47 |
| 12 | Aug-26 | $16,100.70 | $4,193.77 | $20,294.47 |

**ONLY CERTIFIED FUNDS ACCEPTED.**

**PAYABLE TO:**

**CITY ON A HILL, LLC**