**COREY B. BECK, ESQ.**
Nevada Bar No. 005870
**THE LAW OFFICE OF COREY B. BECK, P.C.**
425 South Sixth Street
Las Vegas, NV 89101
Ph.: (702) 678-1999
Fax: (702) 678-6788
becklegal@yahoo.com
Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**ACTON ACADEMY RED ROCK, LLC,**<br><br><br><br>Debtor. | Case No. 26-13991-mkn<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Hearing Date: October 7, 2026<br>Hearing Time: 9:30am |

**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Acton Academy Red Rock, LLC, the debtor and debtor in possession herein (the "Debtor"), by and through its counsel of record, The Law Office of Corey B. Beck, P.C., hereby opposes the *Motion for Relief from the Automatic Stay* [ECF No. 24] (the "Motion") filed by The Mountain Church and Precedent Properties, LLC (together, "Movant"). This Opposition is based upon the following memorandum of points and authorities, **The Declaration of Amy Novak (to be supplemented)** filed concurrently herewith, the papers and pleadings on file in this case, and such evidence and argument as may be presented at the hearing.

/ / /

## I. INTRODUCTION

Movant asks this Court to terminate the automatic stay so that it may evict a Chapter 11 debtor from the only premises out of which it operates a school. The post-petition default on which Movant rests that request is $2,388.94.

That figure is Movant's own. By Movant's own accounting, the Debtor's post-petition rent obligation for July and August 2026 totals $40,588.94, and Movant has received and applied $38,200.00 against it: $32,200.00 tendered by the Debtor within six days, and $6,000.00 collected by Movant directly from a third-party occupant that Movant itself describes as being on the Premises "with Landlord's knowledge and consent." Movant has been paid 94.1% of every post-petition dollar it claims. On that record, it seeks an order that would close a school, displace its students, and extinguish the estate's principal asset.

Two facts about those payments answer the Motion's central theme. First, the Debtor paid without taking any of the deductions Movant complains of. Movant devotes much of its correspondence to the reductions proposed in the Debtor's July 17, 2026 letter, which would have produced a monthly payment of $7,418.71. The Debtor did not pay $7,418.71. It paid $32,200.00 against a two-month net obligation of $34,588.94.

The Motion is also unsupported by the record Movant chose to submit. Movant did not file the Lease, though every material term it asks this Court to enforce is found only there. It has not established that it is the lessor, having named the landlord three different ways across its own papers while directing payment to a non-party. Its sole affidavit is captioned in the Eighth Judicial District Court in an unrelated construction action. And the two ledgers that affidavit authenticates contradict each other, one of them by exactly $10,000.00 against itself.

The equities run the same direction. While demanding strict compliance of the Debtor, Movant has, post-petition, served a written "PAST DUE" demand for $149,518.79, a sum consisting overwhelmingly of pre-petition debt, payable in certified funds to an entity that is not a movant; ordered the Debtor to clear its property out of several areas of the building on two days' notice and announced that anything left in a storage container would be "discarded"; and posted trespass notices against a provider that works with the Debtor's students.

What this record shows is a debtor that resumed paying rent, paid $32,200.00 in six days, declined to apply the deductions it had proposed, and stands 5.9% short, opposed by a landlord that collects weekly payments from the same space and will not say how much. Cause has not been shown. The Motion should be denied.

## OVERVIEW OF CASE EVENTS

Debtor's Objection to Landlord's Claim is set to be heard on November 10, 2026. Motion to Extend Time to Assum or Reject Lease is scheduled for October 28, 2026. Debtor is seeking to reduce prepetition claim significantly. If Court grants Objection, offset/setoff will likely apply to post-petition accounting as well.

In addition, Debtor is learning how many students will be enrolling for next year. Debtor will be able to project income from students enrolling for next school year soon. Debtor will commit to tender funds toward arrears owed at the beginning of next year. The bottom line is that continuing Motion to Lift Stay for 60 days will allow Objection to Claim, Motion to Extend Time to Assume or Reject Lease to also take place. Finally, negotiation between the parties can also occur.

/ / /

## II. STATEMENT OF FACTS

### A. The Debtor, the Premises, and the Petition

1. The Debtor operates a school at Suite 300, 9501 Hillwood Drive, Las Vegas, Nevada 89134 (the "Premises"). The Premises is the Debtor's sole operating location, the situs of its enrolled student body, and the principal asset of this estate. (Novak Decl. ¶¶ 2, 22.)

2. The Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on June 26, 2026.

3. Movant asserts a written commercial lease dated September 11, 2025, with a five-year term expiring September 30, 2030 (the "Lease"). (Mot. ¶ 1; Goulet Aff. ¶ 4.) Movant filed neither the Lease nor any excerpt of it with the Motion or with the supporting affidavit.

4. Movant has not identified the lessor consistently. Its July 22, 2026 letter states that the landlord is "The MNTN Church / City on a Hill, LLC and Precedent Properties, LLC." The Motion is brought by "The Mountain Church and Precedent Properties, LLC." The affidavit describes The Mountain Church as "the owner and one of the lessors" without naming the others. (Goulet Aff. ¶ 2.) Exhibit C directs payment to "CITY ON A HILL, LLC."

### B. The post-petition payment record, on Movant's own figures

5. Movant asserts that post-petition rent accrues at $20,294.47 per month, such that the July 1 and August 1, 2026 installments total $40,588.94. (Mot. ¶ 2.)

6. Movant admits receiving and applying: (a) $4,800.00 from JCC, credited to July; (b) $1,200.00 from JCC, credited to August; (c) $15,000.00 from the Debtor on August 7,

2026, applied to July; and (d) $17,200.00 from the Debtor on August 12, 2026, applied to August. (Mot. ¶¶ 5–7.) These sums total $38,200.00.

7. Movant's claimed shortfall is $494.47 for July and $1,894.47 for August: $2,388.94 in total, or approximately 5.9% of the two-month post-petition obligation.

8. The Debtor's payments were made without deducting any of the reductions proposed in its counsel's July 17, 2026 letter. That letter had proposed an adjusted monthly payment of $7,418.71. The Debtor instead tendered $32,200.00 against a two-month obligation of $34,588.94 net of Movant's applied credits. (Novak Decl. ¶ 5.)

9. On September 4, 2026, the Debtor tendered $15,25.80 in payment of the September 2026 installment in full.

**C. Third-party sums collected by Movant and not credited**

10. JCC pays $1,200.00 per week in connection with the use of space within the Premises, and since July 2026 has paid those sums directly to Movant. (Novak Decl. ¶ 8.) July 2026 contained five such weekly periods, totaling $6,000.00. Movant credited $4,800.00.

11. For August 2026, Movant credited $1,200.00, by its own description, "for the first week of the month." (Aug. 2, 2026 letter.) At least two weekly periods had run before the Motion was filed on August 13, 2026, and further weekly periods have run in every week since.

12. Movant has never provided the Debtor or this Court with an accounting of the sums it has collected from JCC or from any other occupant of the Premises. (Novak Decl. ¶ 10.)

**D. Movant's ledgers do not reconcile**

13. Exhibit A to the Goulet Affidavit (statement dated June 3, 2026) bills September 2025 at a prorated $12,853.16 ($10,197.11 in base rent plus $2,656.05 in CAM) and includes the line item "Security deposit due $10,000.00" within its $217,461.25 total.

14. Exhibit C (statement dated August 10, 2026) states "Security deposit returned $10,000.00." Yet its itemized components, $236,089.13 in rent and CAM, plus late fees of $8,903.10, $1,037.30, $2,020.41, $1,547.42, and $1,909.43, totaling $15,417.66, sum to $251,506.79, against a stated "Total due" of $261,506.79. The unexplained difference is exactly $10,000.00.

15. Exhibit C's month-by-month table bills September 2025 at the full $20,294.47, diverging from Exhibit A by $7,441.31 for that month alone, and is irreconcilable with Exhibit C's own $236,089.13 rent-and-CAM total.

16. Exhibit C is not a passive ledger. It is a post-petition demand, dated August 10, 2026, addressed to "Acton Academy – Red Rock, c/o Amy Novak," headed "PAST DUE," requiring $149,518.79 in "CERTIFIED FUNDS" payable to "CITY ON A HILL, LLC." The overwhelming majority of the sum demanded consists of pre-petition charges.

**E. Movant's post-petition conduct toward the estate**

17. By email dated August 10, 2026, Movant directed the Debtor to remove its property from the second-floor lobby, the kitchen, Suite 200, and the first-floor demo space by the close of business on August 12, 2026; advised that a storage container in the parking lot was being removed and that its contents would "be discarded" if not retrieved by that same

date; and disclosed the container's access code in the body of the correspondence. (Novak Decl. ¶ 21.)

18. Movant has posted on the property, and served, a trespass notice directed at Playbloom Therapy Collaborative, LLC, a provider that works with the Debtor's students at the Premises. (Novak Decl. ¶¶ 17–18.)

19. The Debtor has not assumed or rejected the Lease, and Movant concedes that the deadline to do so under 11 U.S.C. § 365(d)(4) has not expired. (Mot. ¶ 10.) That deadline is the earlier of 120 days after the order for relief, on or about October 24, 2026, or entry of an order confirming a plan. Movant does not allege that the Lease was terminated before the petition date.

20. Movant does not seek relief under 11 U.S.C. § 362(d)(2), which requires both that the debtor lack equity in the property and that the property not be necessary to an effective reorganization. Movant does not allege that the estate lacks equity in the leasehold, and the Premises is the Debtor's sole operating location and the asset on which any reorganization depends. Movant separately does not allege that the Premises is declining in value or that it is at risk of waste or damage.

## III. LEGAL STANDARD

Section 362(d) directs that the court "shall grant relief from the stay … such as by terminating, annulling, modifying, or conditioning such stay," and paragraph (1) supplies the ground Movant invokes: "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d), (d)(1). The enumerated remedies are illustrative, not exclusive, and the choice among them is committed to the court. Because there is

no clear definition of what constitutes cause, discretionary relief from the stay must be determined on a case-by-case basis. *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985); *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 736 (Bankr. C.D. Cal. 2015). The decision whether to grant or deny stay relief is "within the broad discretion of the bankruptcy court." *In re Am. Spectrum Realty, Inc.*, 540 B.R. at 737 (quoting *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 558 (Bankr. C.D. Cal. 2004)).

Section 362(g) allocates the burden of proof at the hearing: the party requesting relief bears it on the issue of the debtor's equity in property, and the party opposing relief bears it on all other issues. 11 U.S.C. § 362(g)(1)–(2). That allocation presupposes a prima facie case. As Movant itself acknowledges, the party seeking relief must first establish a prima facie case that cause exists before any burden shifts, and "[i]f the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." *In re Plumberex Specialty Prods., Inc.*, 311 B.R. at 557; *accord In re Am. Spectrum Realty, Inc.*, 540 B.R. at 737; *Dangcil v. JPMorgan Chase Bank, N.A. (In re Dangcil)*, No. BAP CC-16-1185-FCTA, 2017 WL 1075045, at *14 (B.A.P. 9th Cir. Mar. 21, 2017) (unpublished). That showing must be made on the moving papers.

Relief from the stay is discretionary and flexible. Section 362(d) authorizes a court to terminate, annul, modify, or condition the stay. A court confronted with a small, curable shortfall is therefore not put to a binary choice between doing nothing and evicting a reorganizing debtor; it may condition continuation of the stay on payment, on a schedule, or on such other adequate protection as the record warrants.

## IV. ARGUMENT

### A. A 5.9% Post-Petition Shortfall, Curable in a Single Payment, Is Not Cause, and the Pre-Petition History Does Not Supply It.

Reduced to Movant's own numbers, the Motion alleges this: of $40,588.94 in post-petition rent, Movant has received $38,200.00. The remainder is $2,388.94. Movant asks this Court to convert that remainder into an order permitting it to evict a Chapter 11 debtor from its only operating location.

The authorities Movant marshals do not reach this record. *In re Benton*, 662 B.R. 517 (Bankr. S.D.N.Y. 2024), was an uncontested Chapter 7 case in which the occupants had never made a rent payment, the debtor was not himself a party to the lease, the landlord held a pre-petition judgment of possession, and the court held in the first instance that no stay was in effect at all. *Aguilar v. Ocwen Loan Servicing, LLC (In re Aguilar)*, No. CC-14-1073, 2014 WL 6981285, at *4 (B.A.P. 9th Cir. Dec. 10, 2014) (unpublished), *aff'd*, 2017 WL 393763 (9th Cir. Jan. 30, 2017), involved a Chapter 7 debtor who had made no payment in over four years, fifty-three missed installments, across four bankruptcy filings in twelve months; there too the Panel concluded that no stay had ever arisen. *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985), concerns a debtor who failed to make seven post-confirmation payments. Its observation that late or erratic payments are of unequal value to one who relies on a steady income stream describes a creditor receiving nothing, not one that has been paid 94.1%. Each of the two later decisions rests on *Ellis*, and *Ellis* rests on total nonpayment. Here the Debtor resumed payment, tendered $32,200.00 within six days, and satisfied more than nineteen of every twenty

dollars of its post-petition obligation. A debtor that has paid 94.1% of post-petition rent has not failed to pay.

Nor does the record support Movant's characterization of the August 12 payment as evidence of intransigence. Movant's own August 10 email states that it expected $15,000.00 toward August rent. The Debtor paid $17,200.00. Movant received more than it had asked for, and moved to lift the stay two days later.

Movant's recitation of $126,473.25 in pre-petition arrears does not close the gap. Movant concedes those sums are not sought through this Motion and are the subject of a filed proof of claim. (Mot. ¶ 3.) Pre-petition default is the ordinary predicate of a Chapter 11 case, not cause to dissolve the protection the case affords; were it otherwise, the stay would be unavailable to precisely the debtors Congress designed it to protect. What governs under § 362(d)(1) is post-petition performance, and that performance is 94.1%.

**B. The Debtor Paid Without Applying Any of the Deductions Movant Complains Of.**

A substantial part of Movant's correspondence, and of the narrative underlying the Motion, is devoted to the reductions proposed in the Debtor's July 17, 2026 letter: a shared-use adjustment, a Sunday-use adjustment, and a credit for JCC's payments, which together would have produced a monthly payment of $7,418.71. Movant briefs at length that the Lease forbids self-applied setoffs.

The argument has no object. The Debtor did not pay $7,418.71, or anything like it. Against a two-month obligation of $34,588.94 net of Movant's own applied credits, the Debtor tendered $32,200.00, or 93.1% of the net amount, and without deducting a dollar on account of the

proposed adjustments. (Novak Decl. ¶ 5.) Debtor paid $15,250.50 on September 4, 2026 for September rent. Whatever the Debtor's counsel proposed in July, no setoff was ever self-applied to any payment Movant received. Movant is entitled to argue that the Lease bars setoff; it is not entitled to have the Court treat a proposal the Debtor abandoned in practice as the conduct on which relief from stay is granted.

The Debtor does not press those adjustments on this Motion and does not ask the Court to adjudicate them here. It reserves them, together with all rights and defenses, for determination in the ordinary course.

### C. Movant's Interest Is Adequately Protected, and Its Late Charges Are Neither Proven Nor Cause.

Movant's asserted interest is the right to timely rent. That interest is protected here. The Debtor has resumed payment and has paid 94.1% of post-petition rent, without deduction. The residual shortfall is $2,388.94, an amount the Debtor stands ready to pay and which, on Movant's own records, may already be covered by uncredited third-party collections. Movant continues to receive weekly payments from an occupant it has authorized. And by Exhibit C's own statement, Movant may hold a $10,000.00 security deposit.

Movant's remaining showing on adequate protection is the assertion that it "depends upon the rental income" to meet taxes, insurance, and debt service. (Goulet Aff. ¶ 17.) That is a general statement of every landlord's position. It is not evidence that a $2,388.94 shortfall has impaired anything, and the affidavit identifies no obligation, no figure, and no consequence tied to it. Movant likewise never identified any form of adequate protection it would accept,

notwithstanding its August 5 offer to confer about "adequate protection acceptable to the Landlord."

Movant's late charges add nothing. The $2,388.94 it pleads is expressly "exclusive of late charges," so those charges form no part of the cause alleged. In any event they are unproven, the Lease not being in evidence, and Movant's August 10 email applies a ten percent charge against the full monthly installment even after crediting substantial payment, generating $1,549.42 and $1,909.43 for two months in which it had been paid $38,200.00. A charge bearing no relation to the harm actually suffered is a penalty, and the Court should not permit an unadjudicated penalty to supply the weight the pleaded default lacks.

### D. The Balance of Harms and the Equities Weigh Decisively Against Relief.

The harm to Movant if the stay remains in place is $2,388.94, plus whatever that sum carries for the weeks it takes to resolve this Motion, and Movant continues to collect weekly payments from the Premises in the meantime. The harm to the estate if the stay is lifted is total: the Debtor loses the space in which it teaches, its students are displaced, its employees lose their positions, and the reorganization ends. No balancing of those consequences favors Movant.

Movant's own post-petition conduct bears on the discretion the Court exercises. Exhibit C to the Motion is a demand, dated August 10, 2026, six weeks after the petition, addressed to the Debtor, headed "PAST DUE," requiring $149,518.79 in certified funds. The overwhelming majority of that sum is pre-petition debt. A post-petition written demand upon a debtor for payment of pre-petition claims is difficult to reconcile with 11 U.S.C. § 362(a)(6), and the Debtor expressly reserves all rights in that regard.

Movant's August 10, 2026 email likewise ordered the Debtor to clear its property from several areas of the building within two days and announced that the contents of a storage container would "be discarded" if not removed by the same deadline, while disclosing the container's access code in correspondence. Property of the estate is not Movant's to discard, and the Debtor reserves all rights under § 362(a)(3).

Movant has also posted and served trespass notices against Playbloom Therapy Collaborative, LLC, a provider that works with the Debtor's students on the Premises, while simultaneously accepting weekly payments from a different occupant it has deemed authorized. A landlord that selectively authorizes occupants, collects from them directly, declines to credit the full amounts collected, threatens to discard estate property, and then moves to evict for the resulting shortfall does not present an equitable case for the extraordinary relief it seeks.

**E. Movant Did Not Make the Good-Faith Effort Local Rule 4001(a)(2) Requires.**

Local Rule 4001(a)(2) is not hortatory. It directs parties in interest "to communicate in good faith regarding resolution of the motion before filing a motion for relief from stay." It fixes a deadline: such attempts "must be made in a reasonable time frame prior to, but in any case no less than three (3) business days (if debtor is represented by an attorney) … before the motion is filed." It imposes an evidentiary requirement: the movant "must provide evidence of their attempt to resolve the matter with more than conclusory declarations, which must be filed with the motion." And it supplies its own remedies: the court "may refuse to entertain a motion or opposition if the parties do not comply with this rule," and "may award, deny, or adjust the fees of an attorney for noncompliance."

Movant's certification recites four letters and a single telephone call on July 30, 2026. The call preceded both of the Debtor's payments. Each letter demanded a different and far larger sum: $15,494.47, then $34,588.94, then $34,588.94 again, then $23,047.79. Each was overtaken by payment before the Motion was filed. Not one of them concerns the default the Motion actually pleads.

That is the difficulty. The $2,388.94 default did not exist until the Debtor's payment of August 12, 2026 was applied. The figure appears for the first time in Movant's letter of August 13, 2026, transmitted the same day the Motion was filed, and thirteen minutes before the supporting affidavit was entered. The Rule requires communication "regarding resolution of the motion," and as to the default this Motion pleads there was no communication at all, three business days before filing or otherwise. The Debtor had tendered $17,200.00 the previous evening, more than Movant's own counsel had written that she expected, and received a motion to terminate the stay in return.

The single exception the Rule contains does not apply: compliance is excused only for motions relating to property the debtor has identified as being surrendered in its schedules, statements, or proposed plan, and the Debtor has identified neither the Lease nor the Premises as being surrendered. Correspondence about superseded figures is not evidence of an attempt to resolve the dispute that was actually brought before the Court. The Debtor respectfully requests that the Court decline to entertain the Motion on this ground, and reserves its right to seek an adjustment of fees under Local Rule 4001(a)(2).

**F. Even If a Section 365(d)(3) Shortfall Can Constitute Cause, It Does Not Compel Termination Here, and the Assumption Period Has Not Run.**

Movant leans heavily on 11 U.S.C. § 365(d)(3). That section requires timely performance of post-petition, pre-rejection obligations, and the Debtor does not dispute that it applies. But nothing in the text of § 365(d)(3) makes every deviation from it cause to terminate the stay, and treating it that way would convert the section into an automatic termination clause operating against any debtor that came up short in any amount. The question under § 362(d)(1) remains whether cause exists on the whole record, and it is answered by the size of the shortfall, the reason for it, and what the landlord has done in the meantime.

Section 365(d)(3) itself reflects that Congress did not regard delay in the earliest post-petition installments as intolerable. The same paragraph on which Movant relies permits the court, for cause, to "extend … the time for performance of any such obligation that arises within 60 days after the date of the order for relief," subject to an outer limit at the close of that sixty-day period. Both installments at issue arose within that window, which ran through August 25, 2026, and both of the Debtor's payments, made on August 7 and August 12, 2026, the forty-second and forty-seventh days of the case, fell inside it.

**G. Movant Has Not Made a Prima Facie Case, Because It Filed Neither the Lease Nor Any Proof That It Is the Lessor.**

The Motion rests entirely on a document Movant chose not to file. Movant asks this Court to find that rent is $20,294.47; that it is due on the first of the month; that it must be paid "without demand, counterclaim, or setoff"; that late charges accrue at ten percent; that subletting is prohibited; and that Movant may terminate and retake possession. Not one of those propositions

is supported by anything in the record other than the affiant's characterization and counsel's correspondence.

Movant's affiant neither attaches, quotes, nor authenticates the Lease. He states that it "is maintained in the Landlord's records and is available to be provided to the Court upon request." (Goulet Aff. ¶ 7.) That is not evidence of the Lease's terms; it is a representation that evidence exists somewhere else. Where a movant's entire theory of cause is a contractual default, the contract is not a supporting exhibit; it is the case.

The same omission leaves Movant's standing unproven. Section 362(d) affords relief to a "party in interest," and a landlord seeking to lift the stay must show that it holds the interest it asks leave to enforce. Movant's papers name the landlord three different ways, its affiant concedes there are unidentified co-lessors, and its own demand statement directs payment to City on a Hill, LLC, which has not appeared and is not a movant. Whether the two entities before the Court may terminate this Lease and retake this space cannot be determined without the instrument that would say so.

Should Movant submit the Lease for the first time with its reply, the deficiency is not cured but relocated. A prima facie case must be made in the moving papers, and the Debtor would be entitled to respond to evidence it has never seen. In that event the Debtor respectfully requests leave to file a supplemental response, or that the Court disregard the untimely submission.

### H. The Only Evidence Offered Is an Affidavit Captioned in Another Court in Another Case, Authenticating Ledgers That Contradict One Another.

The sole evidentiary submission supporting the Motion is the Affidavit of Samuel Goulet [ECF No. 26]. Its caption reads "EIGHTH JUDICIAL DISTRICT COURT, CLARK COUNTY,

NEVADA," in *Eagle One Construction LLC v. Precedent Properties LLC; The Mountain Church*, Case No. A-26-948918-C, Dept. No. 29, a state-court action to which this Debtor is not a party, and identifies counsel as "Attorneys for Defendants." It nowhere identifies this Court, this Debtor, or Case No. 26-13991-mkn. Movant's July 22, 2026 demand letter, submitted as part of Exhibit B, carries the same foreign case caption in its running header.

The affidavit's foundation is no stronger than its caption. The affiant swears in part upon "review of the books and records of the Landlord," and the records he authenticates cannot both be right.

The security deposit is the clearest illustration. Exhibit A includes "Security deposit due $10,000.00" within its total; that is, it treats the deposit as never paid. Exhibit C states "Security deposit returned $10,000.00." Yet Exhibit C's components, $236,089.13 in rent and CAM plus $15,417.66 in itemized late fees, sum to $251,506.79, against a stated "Total due" of $261,506.79. The difference is precisely $10,000.00. Either Movant holds a $10,000.00 deposit, in which case it holds security more than four times the default it pleads, or it does not, in which case its own total overstates its claim by that amount. Movant's exhibits cannot say which, and Movant's affidavit does not address it.

The September 2025 charge is a second illustration. Exhibit A bills the partial first month at $12,853.16. Exhibit C's table bills the same month at $20,294.47, a divergence of $7,441.31, while Exhibit C's own rent-and-CAM total of $236,089.13 is consistent with neither entry.

These documents are the only evidence of amount in the record. A movant whose own accounting cannot be reconciled has not proven the default upon which its request for relief depends.

**I. Disputed Issues of Material Fact Require an Evidentiary Hearing.**

The amount of any post-petition shortfall is disputed. It turns on what Movant has collected from occupants of the Premises and when, on whether Movant holds a $10,000.00 security deposit, on which of two irreconcilable ledgers is correct, and on the terms of a Lease that is not in evidence. Movant has put none of that beyond dispute, and its own exhibits place much of it in doubt.

Should the Court be inclined to grant relief on any ground, the Debtor respectfully requests an evidentiary hearing at which those questions can be resolved on testimony and documents rather than on competing characterizations.

**J. In the Alternative, the Stay Should Be Conditioned Rather Than Terminated, and an Accounting Ordered.**

If the Court is inclined to find cause on this record, the appropriate remedy is to condition the stay rather than lift it. The Debtor requests, in that event, an order requiring it to pay the balance the Court determines to be owing within a fixed period, and to remain current on post-petition rent thereafter, with relief available to Movant upon a declaration of default. That approach preserves Movant's bargain, protects the estate, and matches the remedy to a shortfall of $2,388.94.

That is the course the Panel approved in *Ellis* itself. There the court granted relief but barred any foreclosure sale so long as the debtor paid the outstanding installments within two weeks and made all future payments promptly, and the Panel affirmed. *In re Ellis*, 60 B.R. Section 362(d) authorizes relief "such as by terminating, annulling, modifying, or conditioning" the stay,

and a conditional order of that kind matches the remedy to a shortfall of $2,388.94 while leaving Movant's bargain intact.

The Debtor further requests that, before any relief is granted, Movant be ordered to account for all sums it has received from JCC and from every other occupant or user of the Premises from June 26, 2026 through the date of the hearing, identifying the payor, the amount, the date, and the period covered, and to credit those sums against the post-petition rent. Movant has collected this money on account of the Debtor's leasehold; the amount is unknown to the Debtor and known to Movant; and it bears directly on whether any default exists at all. No order should issue on a balance that has not been reconciled against Movant's own receipts.

Movant's request to waive the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(4) should be denied in any event. Movant offers no reason for immediate execution. There is no allegation of waste, of danger to the property, or of a depreciating asset, only a sum that could be paid within the very fourteen days Movant asks the Court to eliminate.

Finally, the Debtor requests that the Court order the stay continued in effect pending the conclusion of a final hearing. This request is time-sensitive. Section 362(e)(1) provides that thirty days after a request for relief from a stay of an act against property of the estate, "such stay is terminated" as to the requesting party unless the court orders it continued in effect. The Motion was filed on August 13, 2026, so absent an order the stay lapses as to Movant on September 12, 2026 by operation of the statute and without regard to the merits. The Debtor requests that the hearing be set before that date, or that the stay be continued in effect pending a final hearing, which § 362(e)(1) permits the Court to consolidate with the preliminary hearing. Continuation is not discretionary on an adequate showing: § 362(e)(1) provides that the court "shall order such

stay continued in effect pending the conclusion of the final hearing … if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing." 11 U.S.C. § 362(e)(1). For all of the reasons set out above, that likelihood is present here.

## V. CONCLUSION

The Debtor resumed paying rent, tendered $32,200.00 in six days, applied none of the deductions its counsel had proposed, and stands 5.9% short of two months' rent. Movant never asked it for the difference. Movant collects $1,200.00 a week from these Premises and will not say how much it has kept. Movant did not file the Lease, has not shown that it is the lessor, supports its Motion with an affidavit captioned in another court in another case, and relies on two ledgers that contradict each other and one that contradicts itself by exactly $10,000.00. That is not a prima facie case for the most drastic relief available under section 362.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The Debtor respectfully requests that the Court deny the Motion in its entirety; or, in the alternative, order Movant to account for all sums received from occupants of the Premises since the petition date and credit them against post-petition rent; condition the continuation of the automatic stay upon the Debtor's payment of such amount as the Court determines to be owing within a reasonable period and upon the Debtor's remaining current on post-petition rent; deny Movant's request to waive the stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(4); order the stay continued in effect pending a final hearing pursuant to 11 U.S.C. § 362(e)(1); and grant such other and further relief as is just and proper.

DATED this 23rd day of September 2026.

THE LAW OFFICE OF COREY B. BECK, P.C.

*/s/ Corey B. Beck, Esq.*________________________
THE LAW OFFICE OF COREY B. BECK, P.C.
COREY B. BECK, ESQ.
Nevada Bar No. 005870
425 South Sixth Street
Las Vegas, NV 89101
*Attorney for Debtor*