Elizabeth A. Skane, Esq. (Bar No.7181)
eskane@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
SKANE MILLS LLP
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144
(702) 363-2535 / Fax (702) 363-2534

Attorneys for Defendants, PRECEDENT PROPERTIES LLC, and THE MOUNTAIN CHURCH

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>ACTON ACADEMY RED ROCK LLC<br><br>Debtor(s) | **CASE NO.: BK-26-13991-mkn**<br><br>**CHAPTER 11**<br><br>**REPLY IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY** |

The Mountain Church (named in the Lease as "The MNTN Church") and Precedent Properties, LLC (together, "Landlord" or "Movant") reply to the Debtor's Opposition [ECF No. 37] (the "Opposition") and the Declaration of Amy Novak [ECF No. 43] (the "Novak Declaration"). This Reply is supported by the memorandum below, the Supplemental Declaration of Samuel Goulet filed concurrently (the "Supp. Goulet Decl."), the papers on file, and any argument at the hearing.

DATED: October 1, 2026

SKANE MILLS LLP

By: */s/ Elizabeth C. Spaur*

Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144
Attorneys for Defendants, PRECEDENT PROPERTIES LLC, and THE MOUNTAIN CHURCH

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Opposition asks the Court to judge this Debtor by a single ratio — "94.1%" — and to ignore everything else. The ratio does not survive the record, and the record the Debtor itself filed confirms cause.

**The Debtor paid nothing for 42 days.** The petition was filed June 26, 2026. Through July 17, a July 30 call, and three written demands, the Debtor promised rent "next week" and paid none. Its first post-petition dollar arrived August 7, thirty-seven days after the July installment came due, and only after Movant's August 5 letter announced this Motion.

**The "94.1%" is not the Debtor's money.** It counts $6,000 that a third party, JCC, paid to Movant directly, which Movant credited voluntarily. The Debtor's own payments cover 79.3% of July and August rent ($32,200.00 of $40,588.94), before the late charges the Lease imposes.

**The default is growing, not curing.** Movant's August 10 accounting left $5,847.79 unpaid after the August 12 payment, including the Lease's 10% late charges. The Debtor then paid roughly $15,250 for September against an installment of at least $20,294.47, calling it payment "in full." The Debtor has never paid a single post-petition installment in full and on time.

**The Debtor has not abandoned its setoffs.** The same day it told this Court it "does not press" them, it filed an objection seeking $69,750.00 in setoffs and announced that, if granted, they "will likely apply to post-petition accounting as well."

**The Opposition's evidentiary attacks collapse on the Debtor's own filings.** The Debtor says the Lease is not in evidence; it filed the Lease itself as Exhibit 4 to ECF No. 38. It says Movant has not shown it is the lessor; that Lease names Movant. It says Movant's ledgers cannot be reconciled; the claimed $10,000.00 gap disappears once the security-deposit line is read correctly. And the Opposition's key facts cite paragraphs of the Novak Declaration that say something else or do not exist.

Section 365(d)(3) is not a suggestion. A debtor that stops paying, pays late and short when pressed, and signals it will self-apply setoffs going forward has supplied cause under § 362(d)(1).

The Motion should be granted. At a minimum, any continuation of the stay should be conditioned on the strict terms set out in Section IX below.

## II. THE DEBTOR'S OWN FILINGS PUT THE LEASE IN THE RECORD AND CONFIRM THAT MOVANT IS THE LESSOR

### A. The Lease Is Before the Court Because the Debtor Filed It.

The Opposition's lead evidentiary argument is that Movant "did not file the Lease." (Opp. at 2, 15–16.) Two hours after filing the Opposition, the Debtor filed the complete Lease, with Exhibits A through D, as Exhibit 4 to its Objection to Landlord's Claim. (ECF No. 38 at 22–45.) The Novak Declaration in support of the Opposition then swears that "[a] true and correct copy of the Lease is attached hereto as Exhibit 4." (Novak Decl. ¶ 5.) The Debtor has authenticated the instrument it faults Movant for omitting.

Movant also submits the same Lease through the Supp. Goulet Decl. The Debtor can claim no surprise or prejudice: it has had the Lease since September 2025, relies on it in its own claim objection, and quotes it in the Opposition itself. That Lease establishes every term the Motion invokes:

| Term | Lease provision |
|---|---|
| Landlord is "The MNTN Church, a non-profit & Precedent Properties, LLC" | § 1.2 |
| Base Rent $16,100.70 plus CAM $4,193.77 in Year 1; Year 2 Base Rent $16,583.72 | Summary pp. 1–2; § 1.8; Ex. C |
| Rent due on the first of each month, "in advance and without demand, counterclaim, or set-off" | § 7 |
| Payment after the 5th triggers a 10% administrative fee on the late amount plus 18% annual interest | § 7 |
| Failure to pay Rent when due is a material default; the 30-day notice-and-cure period does not apply to Rent | § 18 |
| Time is of the essence; acceptance of Rent is not a waiver of prior breaches | §§ 21.9, 21.12 |
| No sublease without Landlord's written consent; no outside service providers without approval | § 15; Ex. D, Rule 11 |
| Landlord may close and lock the Building on Sundays; may diminish common areas without modifying Tenant's obligations | Ex. D, Rule 12; Parking Rule 13 |

### B. Movant Is the Lessor, as the Debtor Itself Pleads.

The Opposition says Movant has named the landlord "three different ways." (Opp. ¶ 4.) Section 1.2 of the Lease resolves it: the lessors are The MNTN Church and Precedent Properties, LLC — the two Movants. "MNTN" is the church's stylized name for "Mountain." The Lease summary allocates the landlord interest 80% to The MNTN Church and 20% to Precedent Properties. (ECF No. 38 at 22.)

The Debtor has conceded the point in its own papers. Ms. Novak swears the Debtor "entered into [the] Lease . . . with The Mountain Church." (ECF No. 38 at 8, ¶ 4.) The Debtor's claim objection is captioned as an objection to "The Mountain Church and Precedent Properties, LLC (Landlord's) Claim." The Debtor cannot object to Movant's claim *as landlord* while denying that Movant *is* the landlord.

## III. THE DEBTOR'S POST-PETITION DEFAULT IS CAUSE: IT IS UNTIMELY, SHORT, AND GROWING

The Debtor concedes that § 365(d)(3) applies and that it has not paid post-petition rent in full. (Opp. at 15.) Section 365(d)(3) requires the trustee to "timely perform all the obligations of the debtor" under an unexpired nonresidential lease until assumption or rejection. The operative word is *timely*. The Ninth Circuit treats the obligation as mandatory and payable at the lease rate. *See In re Cukierman*, 265 F.3d 846 (9th Cir. 2001). The Opposition's arithmetic ignores timeliness entirely.

### A. The Payment Chronology, on the Debtor's Own Evidence.

| Date (2026) | Event | Source |
|---|---|---|
| June 26 | Petition; Debtor's notice promises rent "starting July 2026" | Mot. Ex. B (Aug. 2 ltr.) |
| July 1 | July installment due; late after July 5 | Lease § 7 |
| July 17 | Debtor proposes to pay $7,418.71/month; promises payment "next week" | Mot. Ex. B |
| July 30 | Debtor again assures July rent will be paid | Mot. Ex. B |
| August 1 | August installment due; nothing yet paid for July | Lease § 7 |
| August 5 | Movant's Local Rule 4001(a)(2) letter announces this Motion | Mot. Ex. B |
| August 7 | First post-petition payment: $15,000.00 (37 days after July due date) | Novak Decl. ¶ 3 |

| Date (2026) | Event | Source |
|---|---|---|
| August 12 | $17,200.00 toward August | Novak Decl. ¶ 3 |
| August 25 | Outer limit of § 365(d)(3)'s 60-day window passes; balance still unpaid | 11 U.S.C. § 365(d)(3) |
| September 4 | $15,250 for September — short by at least $5,043.97 | Novak Decl. ¶ 4 |

The Debtor did not "resume" payment. It began paying only once a motion was imminent, and it has not made one full, timely payment since the petition.

**B. The "94.1%" Figure Counts Movant's Own Mitigation as the Debtor's Performance.**

The Opposition reaches 94.1% by adding $6,000.00 that JCC paid *to Movant* to the Debtor's $32,200.00. (Opp. at 2.) Movant accepted and credited those sums voluntarily, without any obligation to do so, and expressly without waiving its rights. (Mot. Ex. B, July 22 ltr. § 2.) A landlord's decision to credit a third party's payments is not the Debtor's performance. Measured by what the Debtor paid, it covered 79.3% of July and August rent, late.

**C. The Shortfall Is Larger Than $2,388.94, and It Is Growing.**

The $2,388.94 figure omits the charges § 365(d)(3) also requires the Debtor to pay. Section 7 of the Lease imposes a 10% administrative fee on any installment unpaid after the fifth, plus 18% interest. Neither July nor August was paid by the fifth. Those charges are "obligations of the debtor" under the Lease, and § 21.8 deems all sums due under the Lease to be rent.

| Month | Net installment (after JCC credit) | 10% late fee (§ 7) | Paid by Debtor | Unpaid |
|---|---|---|---|---|
| July 2026 | $15,494.47 | $1,549.42 | $15,000.00 | $2,043.89 |
| August 2026 | $19,094.47 | $1,909.43 | $17,200.00 | $3,803.90 |
| September 2026 | $20,294.47 | [$504.40] | $15,250.[50/80] | [$5,548.37] |
| **Total** | | | | **{{$11,396.16}}** plus 18% interest |

///

///

///

The Opposition asserts the September payment was "in full." (Opp. ¶ 9; Novak Decl. ¶ 4.) The Debtor offers three different figures for that payment — $15,25.80, $15,250.50, and $15,250.80 — and no explanation of how any of them equals a $20,294.47 installment. The likeliest explanation is a self-applied deduction, which is exactly the conduct the Opposition claims the Debtor has abandoned.

The October 1 installment comes due six days before the hearing. [Movant will advise the Court at the hearing whether it was paid in full.]

**D. The Debtor's Own Authority Treats Late and Erratic Payment as Cause.**

The Opposition says *Ellis v. Parr (In re Ellis)*, 60 B.R. 432 (B.A.P. 9th Cir. 1985), "rests on total nonpayment." (Opp. at 9.) It quotes the opposite. As the Opposition itself acknowledges, *Ellis* recognized that late or erratic payments are of unequal value to a creditor that relies on a steady income stream. That describes this Landlord: its rent pays the Building's taxes, insurance, and debt service. (Goulet Aff. ¶ 17.) A tenant that pays nothing for six weeks, then pays in irregular lump sums that never match the installment, is precisely the erratic payor *Ellis* describes.

**E. The Pre-Petition Record and the Debtor's Candor About Its Finances Confirm the Risk.**

Movant does not seek pre-petition arrears through this Motion. But the pre-petition record shows the pattern the post-petition record repeats. In ten months before the petition, the Debtor paid $90,988.00 against $195,500.39 in rent and CAM — about 47%. (Mot. Ex. A.) It did not pay the full security deposit.

The Opposition now asks for 60 more days because the Debtor is still "learning how many students will be enrolling" and will "commit to tender funds toward arrears . . . at the beginning of next year." (Opp. at 3.) That is a candid admission that the Debtor cannot presently show it can cure roughly $126,473.25 in arrears or provide adequate assurance of future performance under § 365(b)(1). Every month of delay adds at least $20,777.49 of Year 2 rent to Movant's exposure.

///

///

///

## IV. THE DEBTOR HAS NOT ABANDONED ITS SETOFFS; IT IS PRESSING THEM AGAINST POST-PETITION RENT

### A. The Debtor's Own Filings Contradict Its "Abandonment" Argument.

The Opposition tells the Court the Debtor "does not press those adjustments" and that no setoff "was ever self-applied." (Opp. at 10–11.) Three facts refute that.

1. **The same-day claim objection.** On September 23, the Debtor filed an objection seeking a $29,750.00 "Sunday use" reduction and a $40,000.00 "shared use" reduction — $69,750.00 in all. (ECF No. 38 at 3.)
2. **The Opposition's own forecast.** The Opposition states that "[i]f Court grants Objection, offset/setoff will likely apply to post-petition accounting as well." (Opp. at 3.) The Debtor is telling the Court it intends to reduce post-petition rent by pre-petition setoff claims.
3. **No evidence of "no deductions."** The Opposition cites Novak Decl. ¶ 5 for the claim that its payments were made "without deducting" anything. (Opp. ¶ 8 and at 10.) Paragraph 5 says only that the Lease is attached. No paragraph of the declaration addresses deductions. Meanwhile, the September payment falls at least $5,043.97 short without explanation. (Section III.C.)

### B. Pre-Petition Setoff Claims Cannot Reduce § 365(d)(3) Rent.

The asserted Sunday-use and shared-use claims are, by the Debtor's own account, claims for ten months of pre-petition loss. (ECF No. 38 at 2–3, 9.) Section 553(a) preserves setoff only of mutual *pre-petition* debts. A pre-petition claim against the landlord lacks mutuality with the debtor's post-petition rent obligation. Section 365(d)(3) independently requires timely performance "notwithstanding section 503(b)(1)." And Lease § 7 requires rent "without demand, counterclaim, or set-off."

The merits belong at the November 10 claim-objection hearing. But the Court should know, in deciding whether to extend the Debtor more time that the claims are internally inconsistent on the Debtor's own sworn statements:

///

///

///

| Debtor's claim | What its own declarations say |
|---|---|
| $29,750 for Landlord's Sunday use (10 months × $2,975) | Ms. Novak "granted permission for Church to use our space" on Sundays (ECF No. 38 at 9, ¶ 6). Rule 12 of Ex. D reserves Landlord's right to close and lock the Building on Sundays. |
| $40,000 for restricted shared space (10 months × $4,000) | The restriction began "on or about June 25, 2026" — one day before the petition (Novak Decl. ¶ 6). It cannot support ten months of loss. |
| $4,000/month rate (1,284 sq. ft. × $2.55) | 1,284 × $2.55 = $3,274.20, not $4,000. Ten months = $32,742, not $40,000. |
| "Improper" restriction of shared areas | Parking Rule 13 lets Landlord "diminish the common areas" without modifying Tenant's obligations. One "restriction" exhibit is a City of Las Vegas fire-inspection directive to clear the Debtor's exit obstructions (ECF No. 38 at 10). |

Ms. Novak also swears that, before June 25, 2026, she "used the second-floor lobby, the kitchen, and the first-floor demo space continuously." (Novak Decl. ¶ 6.) None of those areas is part of Suite 300. (Lease §§ 1.4, 3.) That admission corroborates the August 10 request that the Debtor remove its property from them, discussed in Section VII.

## V. MOVANT'S LEDGERS RECONCILE, AND THE AFFIDAVIT'S CAPTION IS A CLERICAL ERROR

### A. The "$10,000 Discrepancy" Is the Unpaid Security Deposit, Carried in Both Ledgers.

The Opposition says Exhibit C "contradicts itself by exactly $10,000.00." (Opp. at 17.) It does not. Both statements carry the same $10,000.00 security-deposit balance in their totals:

| Component | Ex. A (June 3, 2026) | Ex. C (Aug. 10, 2026) |
|---|---|---|
| Security deposit balance | $10,000.00 ("due") | $10,000.00 ("returned") |
| Rent and CAM billed | $195,500.39 (Sept. 2025–June 2026) | $236,089.13 (Sept. 2025–Aug. 2026) |
| Late fees | $11,960.86 | $15,417.66 |
| **Total due** | **$217,461.25** | **$261,506.79** |

///

///

///

Each column sums exactly to its stated total. Exhibit C's word "returned" refers to the Debtor's $10,000.00 security-deposit payment that was returned unpaid, which is why the deposit remains owing and appears in both totals. The Lease required a $16,000.00 deposit at signing. (Lease § 1.7.) Movant holds no $10,000.00 cushion; the Debtor owes it.

### B. The September 2025 Row Is a Typographical Error That Does Not Affect Any Total.

Exhibit C's rent-and-CAM total is Exhibit A's total plus the July and August 2026 installments: $195,500.39 + $20,294.47 + $20,294.47 = $236,089.33, within $0.20 of the $236,089.13 shown. That total therefore uses the prorated September 2025 charge of $12,853.16, exactly as Exhibit A and Lease § 1.7 do. The single table row showing September 2025 at $20,294.47 is a data-entry error in the display table, not in the billing. The Opposition's claim that the total is "consistent with neither entry" is simply incorrect.

More fundamentally, none of this bears on the post-petition default. That default is computed from the $20,294.47 monthly installment the Debtor does not dispute, the credits Movant applied, and the payments the Debtor admits making.

### C. The Goulet Affidavit's Caption Was a Template Error; the Substance Is Sworn and Specific to This Case.

Movant acknowledges that the Goulet Affidavit [ECF No. 26] bore the caption of an unrelated state-court matter, and that the running header of Movant's July 22 letter carried the same template reference. Both were clerical errors. The affidavit's substance concerns only this Debtor, this Lease, and these Premises. The July 22 letter's reference block correctly identifies the Debtor, this case number, and the Premises. A caption defect does not negate sworn testimony.

## VI. MOVANT COMPLIED WITH LOCAL RULE 4001(a)(2)

Local Rule 4001(a)(2) requires good-faith communication "regarding resolution of the motion" at least three business days before filing, documented with more than conclusory declarations. Movant did exactly that, in writing, repeatedly:

1. **July 22** — demanded July rent, rejected the proposed $7,418.71 payment, and invited a meet-and-confer.
2. **July 30** — telephone conference; the Debtor promised July rent.

3. **August 2** — demanded $34,588.94 and warned that non-payment is cause for stay relief under § 362(d)(1).
4. **August 5** — invoked Local Rule 4001(a)(2) by name, offered to confer on "a cure of the post-petition default or other adequate protection," and stated Movant would otherwise seek stay relief.
5. **August 10** — acknowledged the $15,000.00 payment, calculated the remaining post-petition balance with late charges, and advised in advance that the Debtor's planned August payment "will likewise be a partial payment."

The August 10 email alone was sent three business days before the August 13 filing. It told the Debtor, before it paid on August 12, precisely what remained owing.

The Opposition's theory is that the Rule required a fresh round of negotiation over the "$2,388.94 default," which did not exist until the August 12 payment was applied. (Opp. at 14.) That reads the Rule out of existence. The "motion" is a motion for stay relief based on the post-petition default; that default existed, and was the subject of every communication, from July 22 forward. If each partial payment reset the three-day clock, a debtor could forestall a stay motion indefinitely by paying slightly less than it owes every few days.

The Opposition also mischaracterizes the August 10 email as Movant "ask[ing] for" $15,000.00. (Opp. at 10.) Movant asked for the full balance. It noted the Debtor's stated intent to pay $15,000.00 and warned that such a payment would be partial. The Debtor paid knowing it was short.

Finally, the Debtor did not respond to the August 5 invitation with any cure proposal or offer of adequate protection. Good faith under the Rule runs both ways. The Debtor's request that the Court decline to entertain the Motion, or adjust fees, should be denied.

## VII. THE DEBTOR'S EQUITABLE ARGUMENTS ARE UNSUPPORTED BY ITS OWN EVIDENCE

The Opposition's equitable narrative rests on factual assertions attributed to the Novak Declaration. The declaration actually filed does not support them:

///

///

///

| Opposition's assertion | Cited as | What the Novak Declaration (ECF No. 43) says |
|---|---|---|
| Payments made without any deduction | ¶ 5 | ¶ 5: the Lease is attached as Exhibit 4 |
| JCC pays $1,200 per week, directly to Movant | ¶ 8 | ¶ 8: Landlord uses the building on Sundays |
| Movant has never provided an accounting | ¶ 10 | ¶ 10: a trespass notice was posted on August 2 |
| Playbloom facts; property-removal facts | ¶¶ 17–18, 21, 22 | The declaration ends at ¶ 11 |
| Wire confirmations for July–September payments | Ex. 1 | No exhibits are attached |

An opposition must be supported by declarations that conform to Local Rule 9014(c). Assertions without evidentiary support should be disregarded. The declaration was also filed a day after the Opposition, which describes it as "to be supplemented." (Opp. at 1.) Movant objects to any further supplementation after the opposition deadline.

**A. Exhibit C Was an Account Statement, Not an Act to Collect Pre-Petition Debt.**

Exhibit C is a statement of account generated by Landlord's bookkeeping staff, not by counsel. It separates each month's charges and every credit, including the post-petition JCC credits and the Debtor's August 7 payment. Movant attached it to its own Motion precisely because it shows the complete account. At no point has Movant, through counsel or otherwise, demanded that the Debtor *pay* pre-petition arrears post-petition. Every demand letter was limited to post-petition rent, and the Motion expressly states that pre-petition arrears are left to the claims process. (Mot. ¶ 3.) The Debtor paid nothing on account of pre-petition debt and identifies no coercive act. Landlord has nonetheless confirmed that its going-forward statements will show post-petition charges only.

**B. The August 10 Request Concerned Property Outside the Debtor's Leasehold.**

The Debtor's leasehold is Suite 300. (Lease §§ 1.4, 3, 11.1.) The August 10 email asked the Debtor to remove its property from the second-floor lobby, kitchen, another tenant's former suite, and first-floor demolition space, and to return it to Suite 300 or remove it from the Building. Ms. Novak now admits the Debtor had been using those areas. (Novak Decl. ¶ 6.) Asking a tenant

to keep its property within its own premises, consistent with Lease § 11.4 and Rule 1, is ordinary building management. It is not an act to obtain possession of, or exercise control over, estate property.

The container access code was provided so the Debtor could retrieve its property, not to jeopardize it. No Debtor property was discarded. The Debtor does not allege that any item was lost.

**C. The Playbloom Notice Was Directed to a Non-Debtor Affiliate Operating Without Consent.**

Playbloom Therapy Collaborative, LLC is not the Debtor. Ms. Novak confirms it is her own company and that it provides services to the Debtor's students on the Premises. (Novak Decl. ¶ 9.) Rule 11 of Exhibit D prohibits the Tenant from employing "any service or contractor for services or work to be performed in the Building except as approved by Landlord." Landlord never approved Playbloom. By the Debtor's own characterization — a "licensee" or "independent contractor" — Playbloom's presence violates Rule 11 even if it is not a sublease under § 15.

The automatic stay protects the Debtor and property of the estate. It does not extend to a separately owned LLC, and the Debtor lacks standing to assert Playbloom's rights. The notice named only Playbloom and sought nothing from the Debtor.

**D. Movant Has Credited Every JCC Dollar It Received, and It Now Provides a Full Accounting.**

The Opposition's claim that JCC paid $6,000.00 for July and continues paying weekly has no evidentiary support. Movant credited every post-petition JCC payment it received: $4,800.00 for July and $1,200.00 for August.

The Debtor's position also proves too much. If JCC's payments for use of the Premises belong to the Debtor, the Debtor was licensing its space to third parties for revenue without Landlord's written consent, in breach of Lease § 15. Landlord's decision to consent to JCC's direct occupancy and credit the Debtor with the proceeds was a concession to the Debtor, not inequitable conduct. Section 15 leaves consent to Landlord; granting it to one occupant does not oblige Landlord to grant it to another.

## VIII. NO CONTINUANCE OR EVIDENTIARY HEARING IS WARRANTED, AND THE DEBTOR'S TIMING ARGUMENTS FAIL

### A. The 60-Day Extension in § 365(d)(3) Helps Movant, Not the Debtor.

Section 365(d)(3) lets the court, "for cause," extend the time to perform obligations arising in the first 60 days after the order for relief, but not "beyond such 60-day period." The Debtor never moved for an extension, and none was ordered. The provision is not self-executing; paying late within the window does not make the payments timely. And the window closed on August 25, 2026, with the July and August balances still unpaid. They remain unpaid today.

### B. The § 362(e)(1) Request Is Moot.

The Opposition, filed September 23, asks that the hearing be set before September 12. (Opp. at 19.) That date had already passed. The Motion was noticed for hearing on October 7, 2026, and the Court will decide it on the merits. In any event, the Debtor has not shown a "reasonable likelihood" of prevailing, for the reasons above.

### C. A 60-Day Continuance Would Only Enlarge Movant's Exposure.

The Debtor asks the Court to continue this Motion for 60 days so that its claim objection and its motion to extend the assumption deadline can be heard. (Opp. at 3.) Neither bears on the post-petition default. The claim objection concerns pre-petition claims that cannot reduce § 365(d)(3) rent. (Section IV.B.) And the Debtor's own explanation for the delay — that it does not yet know its enrollment or projected income — is a reason to grant relief, not to postpone it. Each month of delay adds at least $20,777.49 in Year 2 rent and CAM that the Debtor has shown it will not pay in full.

The § 365(d)(4) period expires on or about October 24, 2026. The Debtor's motion to extend it is set for October 28, after that date. Movant reserves all rights under § 365(d)(4), including its position that any extension beyond a first 90-day extension requires Movant's prior written consent, which Movant will not give on this record. *See* 11 U.S.C. § 365(d)(4)(B)(ii).

### D. There Is No Genuine Dispute of Material Fact.

The facts that establish cause come from the Debtor's own filings: the Lease terms (ECF No. 38, Ex. 4), the payment dates and amounts (Novak Decl. ¶¶ 3–4), and the unexplained

September shortfall. The only facts the Opposition says are "disputed" — the JCC receipts, the security deposit, and the ledger rows — are resolved by the Supp. Goulet Decl., and none changes the existence of a default. The merits of the Debtor's setoff theories belong to the November 10 claim-objection hearing. No evidentiary hearing is needed.

## IX. ALTERNATIVELY, ANY CONDITIONAL ORDER MUST INCLUDE MEANINGFUL PROTECTIONS

Movant asks that the stay be terminated. If the Court is inclined instead to condition the stay, the Debtor's proposal — pay whatever the Court later finds owing, within an unspecified "reasonable period" — would simply restore the status quo that produced this Motion. Any conditional order should require:

1. **Cure within 7 days.** Payment of all unpaid post-petition rent, CAM, and Lease § 7 late charges through the date of the hearing, , within seven days of entry of the order.
2. **Timely monthly payment in full.** Payment of each installment, at the Lease rate and without any deduction or setoff, on or before the fifth day of each month, in certified funds or wire to the account Landlord designates.
3. **No self-help setoffs.** An express prohibition on reducing any post-petition payment on account of any claim, including those asserted in ECF No. 38, absent a further order of this Court.
4. **Third-party occupancy.** Within 14 days, a written disclosure of every person or entity that has used or occupied the Premises since the petition date, with all amounts received; and no new occupancy or service-provider arrangement without Landlord's written consent. (Lease § 15; Ex. D, Rule 11.)
5. **Default mechanism.** On any default, Landlord may file and serve a declaration of default. If the default is not cured within 10 days of service, the stay terminates without further hearing on submission of an order.
6. **Limited cures.** The Debtor may cure no more than one default. A second default entitles Landlord to an order terminating the stay without an opportunity to cure.
7. **Duration and waiver.** The conditions apply until the Lease is assumed or rejected. Any order terminating the stay on default is effective immediately, and the 14-day stay under Fed. R. Bankr. P. 4001(a)(4) is waived.

These terms give the Debtor the chance it asks for while ensuring Movant is not again left to fund the estate's occupancy.

### A. Waiver of the Rule 4001(a)(4) Stay Is Justified.

The Debtor argues there is no reason for immediate effect. (Opp. at 19.) The reason is the record: forty-two days of non-payment after repeated promises, two short payments, and a third

short payment described as "in full." Rent continues to accrue daily, and the Debtor has candidly told the Court it cannot yet project its income. Fourteen more days of occupancy without assured payment is precisely the prejudice the waiver guards against.

## X. CONCLUSION

The Debtor paid no post-petition rent for six weeks, then paid late and short, and has not made a single full, timely payment since the petition. It has told this Court it intends to apply pre-petition setoffs to post-petition rent, and it cannot yet say how it will cure its arrears. The Lease it faults Movant for omitting is in the record because the Debtor filed it, and it names Movant as landlord. Movant respectfully requests that the Court:

1. grant the Motion and terminate the automatic stay as to the Lease and the Premises;
2. waive the 14-day stay under Fed. R. Bankr. P. 4001(a)(4);
3. alternatively, condition the stay on the terms in Section IX;
4. deny the Debtor's requests for a continuance, an evidentiary hearing, and relief under Local Rule 4001(a)(2); and
5. grant such further relief as is just.

DATED: October 1, 2026

SKANE MILLS LLP

By: */s/ Elizabeth C. Spaur*

Elizabeth A. Skane, Esq. (Bar No.7181)
eskane@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144

Attorneys for Defendants,
PRECEDENT PROPERTIES LLC, and THE MOUNTAIN CHURCH

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 1, 2026, a true and correct copy of the above and foregoing **REPLY IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**, was submitted electronically for filing and/or service with the United States Bankruptcy Court, District of Nevada. Electronic Service of the foregoing document shall be made to all parties listed on the Master Service List in accordance with the Electronic Service and Filing Order.

*/s/ Yesenia Lopez-Lutes*

____________________________________
An employee of SKANE MILLS LLP

**SERVICE LIST**

| | |
|---|---|
| Corey B. Beck, Esq.<br>The Law Offices of Corey B. Beck, Esq. 425 South Sixth Street<br>Las Vegas, Nevada 89101<br><br>Acton Academy Red Rock, LLC 9501 Hillwood Drive, Suite 300 Las Vegas, Nevada 89134<br><br>*Attorney for the Debtor* | |
| Office of the United States Trustee<br>c/o Carlos R. Hernandez-Vivoni<br>300 Las Vegas Boulevard South, Suite 4300<br>Las Vegas, Nevada 89101 | Bamboo HR<br>c/o Caine & Weiner<br>Attn: Yvette Resendiz 5805 Sepulveda Blvd, 4th FL Van Nuys, CA 91411 |
| U.S. Small Business Administration, Office of General Counsel,<br>312 N. Spring St., 5th Fl.,<br>Los Angeles, CA 90012 | Department of Justice Office of the U.S. Trustee 600 Las Vegas Blvd.<br>Las Vegas, NV 89101 |
| Internal Revenue Service<br>Attn: Centralized Insolvency Operation P.O. Box 7346<br>Philadelphia, PA 19101 | Internal Revenue Service Stop 5028<br>110 City Parkway<br>Las Vegas, NV 89106 |
| Department of Motor Vehicles Records Section<br>555 Wright Way<br>Carson City, NV 89711 | Nevada DETR<br>500 E. Third St. Carson City, NV 89701 |
| Nevada Department of Taxation<br>555 E. Washington Avenue, Suite 1300<br>Bankruptcy Section<br>Las Vegas, NV 89101 | Nevada Department of Taxation<br>Bankruptcy Section<br>700 E. Warm Springs Rd., Ste. 200<br>Las Vegas, NV 89119 |
| Nevada Labor Commissioner 3300 W. Sahara Ave., Ste. 225 Las Vegas, NV 89102 | Small Business Administration 312 N. Spring St., 5th Fl. Los Angeles, CA 90012 |