Elizabeth A. Skane, Esq. (Bar No. 7181)
eskane@skanemills.com
Sarai L. Brown, Esq. (Bar No. 11067)
sbrown@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
SKANE MILLS LLP
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144
(702) 363-2535 / Fax (702) 363-2534
Attorneys for Movant,
*The Mountain Church and Precedent Properties, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**ACTON ACADEMY RED ROCK, LLC,**<br><br>Debtor. | Case No. 26-13991-mkn<br>Chapter 11<br><br>**OPPOSITION TO DEBTOR'S OBJECTION TO THE MOUNTAIN CHURCH AND PRECEDENT PROPERTIES, LLC (LANDLORD'S) CLAIM [ECF No. 38]**<br><br>Hearing Date: October 28, 2026<br>Hearing Time:9:30 a.m. |

**OPPOSITION TO DEBTOR'S OBJECTION TO THE MOUNTAIN CHURCH AND PRECEDENT PROPERTIES, LLC (LANDLORD'S) CLAIM [ECF No. 38]**

The Mountain Church and Precedent Properties, LLC (collectively, the "Landlord"), by and through its counsel, Skane Mills LLP, opposes the *Objection to The Mountain Church and Precedent Properties, LLC (Landlord's) Claim* [ECF No. 38] (the "Objection") filed by Debtor Acton Academy Red Rock, LLC (the "Debtor"). This Opposition is based on the following memorandum of points and authorities, the papers on file in this case, and any argument the Court entertains at the hearing.

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Debtor does not dispute that it owes the Landlord $126,473.25 in pre-petition rent, CAM charges, and late fees. It does not dispute the lease, the rent, the payment history, or the arithmetic. Instead, it asks the Court to write $69,750.00 off that balance through two self-calculated “setoffs” that have no basis in the Lease, no support in the record, and — in several places — no support in the Debtor’s own exhibits.

**First**, the $29,750.00 “Sunday use” setoff rests on the Debtor’s own sworn admission that it *granted* the church permission to use the space on Sundays. A tenant cannot license space for free and then bill the licensee retroactively as a rent credit. The Lease also expressly reserves to the Landlord the right to close and lock the Building on Sundays, and the Debtor’s per-Sunday figure is invented and miscalculated on its face.

**Second**, the $40,000.00 “shared space” setoff misreads what the 1,284 square feet are. That figure is not a room the Debtor was locked out of; it is the Debtor’s pro-rata share of the Building’s common areas, folded into its 7,667 rentable square feet. The Lease reserves to the Landlord the right to regulate, close, and diminish common areas without any change to the Tenant’s obligations. And every restriction notice the Debtor attaches is dated July 20, 2026 or later — after the June 26, 2026 petition date. None of them can reduce a claim for rent that came due between September 2025 and June 2026.

**Third**, the Objection was filed before any proof of claim existed. The Landlord has since filed a proof of claim, which is prima facie evidence of its validity and amount. The Debtor’s unsupported declaration does not come close to the probative force needed to rebut it. The Objection should be overruled.

## II. STATEMENT OF FACTS

### A. The Lease.

1. The Landlord and the Debtor are parties to an NNN Office Lease for Suite #300 at 9501 Hillwood Drive, Las Vegas, Nevada 89134, dated September 11, 2025 (the “Lease”). Ms.

Novak signed for the Debtor, and personally as guarantor, on June 10, 2025, and initialed every page. *See Executed Lease,* attached as Exhibit A at 17. The copy the Debtor attached to its Objection is unsigned. (ECF No. 38 at 38.)

2. **The Premises.** The Lease demises "Suite #300 of the building," approximately 7,667 rentable square feet. (Lease §§ 1.4, 3.) The Lease summary breaks that figure down: Suite 300 itself (approximately 6,383 square feet) plus "31.32% of the Open and shared space +/-1,284 sq ft." (Lease at 1.) The floor plan attached as Exhibit A shows the 6,383 square feet as the second-floor area, with the 697-square-foot balcony "included" in it. (Lease Ex. A.) The Debtor accepted the Premises "AS IS, WITH ALL FAULTS." (Lease § 5.)

3. **Rent and operating expenses.** Monthly rent is $16,100.70 in base rent plus $4,193.77 in CAM/operating expenses, for $20,294.47. (Lease §§ 1.8, 1.9 & Ex. C.) The Lease is "intended to be an *absolute-net* lease," with all Building expenses passed through as operating expenses. (Lease § 8.1.) All sums due "shall be deemed to be rent or additional rent." (Lease § 21.8.)

4. **No setoff.** Rent is payable on the first of each month "in advance and without demand, counterclaim, or set-off," with a 10% administrative fee and 18% annual interest on late payments. (Lease § 7.)

5. **Limited abatement.** The Lease permits rent abatement in only three narrow circumstances:

- an interruption of Landlord-furnished services lasting more than five consecutive days and within the Landlord's control — and even then, a failure to furnish services "shall not be deemed or construed as an eviction or relieve Tenant from the performance of any of the obligations imposed upon Tenant by this Lease" (Lease § 12.1);
- casualty damage, in proportion to the part of the Premises "unusable by Tenant" (Lease § 16); and

- a partial condemnation, apportioned to the part of the Premises "remaining useable by Tenant" (Lease § 17).

6. **Use of the Premises.** The Debtor must use the Premises "exclusively" for private schooling and "for no other purposes." (Lease §§ 1.11, 11.1.) It must not use the Premises in violation of law, must comply with all fire-rating rules and orders, and must not obstruct or interfere with the rights of other occupants. (Lease §§ 11.2–11.4.) The Landlord's obligations include "key fob security locks on all building entrances to be locked after business hours." (Lease § 12.)

7. **Rules and Regulations.** The Debtor must "observe faithfully and comply strictly" with the Rules and Regulations "as Landlord may from time to time reasonably adopt for the safety, care, and cleanliness of the Building," and the Landlord "shall not be liable to the Tenant for violation of any such Rules and Regulations." (Lease § 21.1.) Among them:

- "Tenant shall not suffer or permit the obstruction of any Common Areas inside & outside of the building including driveways, walkways, and stairways, lobby, hallways, bathrooms, stairwells." (Ex. D, Rule 1.)
- "Landlord reserves the right to close and lock the Building on Saturdays, Sundays, and legal holidays and on other days between the hours of 7:00 P.M. and 7:00 A.M. of the following day." (Ex. D, Rule 12.)
- "Tenant shall comply with all safety, fire protection, and evacuation regulations established by Landlord or any applicable governmental agency." (Ex. D, Rule 20.)
- The Landlord may adopt "such other reasonable rules and regulations as it may from time to time deem necessary for the appropriate operation and safety of the Project and its occupants," and "Tenant agrees to abide by these and such rules." (Ex. D, Rule 23.)
- The Landlord "may at any time close any common area," "may do such other acts in and to the common areas as in its judgment may be desirable," has "the right to diminish the common areas," and "shall under no circumstances be liable for any

reduction of the common areas, and no such reduction shall terminate or modify this Lease or Tenant's obligations hereunder." (Ex. D, Parking Rule 13.)

8. **Defaults and remedies.** The Landlord is not in default "unless and until it has failed to perform such obligation within thirty (30) days after written notice by Tenant to Landlord specifying wherein Landlord has failed to perform." (Lease § 18.) The Debtor's remedies arise only "[u]pon a default by Landlord." (Lease § 19.3.) Notices must be hand-delivered, sent by registered or certified mail, or sent overnight, addressed to the church's pastor, Samuel Goulet. (Lease § 21.6.)

9. **Integration, waiver, and quiet enjoyment.** The Lease "contains all the agreements of the parties," and "[n]o provision of this Lease may be amended or added to except by any agreement in writing signed by the parties." (Lease § 21.11.) Captions "shall not be considered in the construction or interpretation of any provision." (Lease § 21.10.) The covenant of quiet enjoyment runs to "the Premises" and is expressly "subject to the terms and conditions of the Lease." (Lease § 21.13.) The prevailing party in any suit for breach of the Lease is entitled to reasonable attorney fees. (Lease § 21.7.)

**B. The Debtor's Pre-Petition Default.**

10. From September 2025 through June 2026, the Debtor was billed $217,461.25 in rent, CAM charges, late fees, and security deposit, and paid $90,988.00, leaving $126,473.25 unpaid. (ECF No. 24) The Debtor never paid a full month's rent when due. (*Id.*)

11. The Debtor filed its Chapter 11 petition on June 26, 2026, to halt a pending eviction. (ECF No. 24 at 2.)

**C. The Objection and the Proof of Claim.**

12. On September 23, 2026, the Debtor filed the Objection, seeking a $29,750.00 reduction for "Sunday use" and a $40,000.00 reduction for "restriction on shared use space." (ECF No. 38 at 3.) At that time no proof of claim had been filed; the Objection targeted the arrearage figure in Exhibit A to the Landlord's Motion for Relief from Stay. (*Id.* at 1.)

13. On October 5, 2026, the Landlord filed its Proof of Claim (Claim No. 3), asserting $165,120.87 based on unpaid lease obligations, of which $126,473.25 is the amount necessary to cure the pre-petition default. (Claim No. 3, Part 2, lines 7–10.)

**D. The Debtor's Evidence.**

14. The Objection rests on a two-page declaration of Amy Novak (the "Novak Declaration"). (ECF No. 38 at 8–9.) On Sunday use, Ms. Novak states that the Landlord's pastor "requested to use our lease space for Sundays Temporarily" immediately after the Lease was signed, and that "I granted permission for Church to use our space." (Novak Decl. ¶¶ 5–6.) She does not state that she ever revoked that permission, in writing or otherwise, or that she ever served a notice of default under Lease §§ 18 and 21.6.

15. Ms. Novak values the Sunday use at "$595/Sunday x 4 = $2,975/month." (Novak Decl. ¶ 10.) She does not say where $595 comes from. And $595 multiplied by 4 is $2,380, not $2,975.

16. On shared space, Ms. Novak seeks "1,284 sq. ft not utilized to 2.55 sq. ft. x 10 months," which she says equals "$4,000.00 each month." (Novak Decl. ¶ 13.) She does not explain the $2.55 rate. And 1,284 × $2.55 is $3,274.20, not $4,000.00.

17. The only evidence of any restriction is a set of photographed notices attached to an email. The earliest is dated **July 20, 2026** — a City of Las Vegas fire inspection notice directing the Debtor to remove exit obstructions. The others are dated **August 25, 2026** and **September 1, 2026**, and each cites Exhibit D, Rules 1–3 of the Lease. (ECF No. 38 at 10–13.) Every one post-dates the petition. A separate trespass notice dated August 7, 2026 is directed to a non-debtor, Playbloom Therapy Collaborative, LLC. (*Id.* at 14.)

## III. LEGAL STANDARD

A claim for which a proof of claim is filed is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). A proof of claim executed and filed in accordance with the Rules "constitutes prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P.

3001(f); *Lundell v. Anchor Constr. Specialists, Inc.* (*In re Lundell*), 223 F.3d 1035, 1039 (9th Cir. 2000).

To overcome that presumption, the objecting party must come forward with evidence sufficient to negate at least one of the facts essential to the claim's legal sufficiency — evidence with probative force equal to that of the proof of claim itself. *Lundell*, 223 F.3d at 1039; *Ashford v. Consol. Pioneer Mortg.* (*In re Consol. Pioneer Mortg.*), 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996). Only if the objector meets that burden does the burden shift back to the claimant to prove the claim by a preponderance of the evidence. *Lundell*, 223 F.3d at 1039.

A party asserting a setoff or recoupment bears the burden of establishing every element of it. Setoff under 11 U.S.C. § 553(a) is limited to mutual debts that *both* arose before the commencement of the case. Recoupment, by contrast, reaches only a demand "arising from the same transaction as the plaintiff's claim," asserted "strictly for the purpose of abatement or reduction of such claim." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996). Under either doctrine, the Debtor must first prove that it holds a valid, quantified claim against the Landlord.

## IV. ARGUMENT

### A. The Objection Does Not Rebut the Prima Facie Validity of the Landlord's Claim.

The Objection was filed twelve days before the Landlord's Proof of Claim existed. It therefore does not engage with the claim actually before the Court. More fundamentally, the Debtor offers nothing that negates any element of the claim. It does not dispute the Lease, the monthly rent, the months billed, the payments credited, or the resulting $126,473.25 pre-petition arrearage. The Objection itself concedes the arrearage figure and asks only for "offsets" against it. (ECF No. 38 at 1.)

The only evidence offered is the Novak Declaration, which is conclusory, internally inconsistent, and arithmetically wrong on both of the figures it asks the Court to adopt. It does not

carry probative force equal to a sworn proof of claim backed by the Lease and a month-by-month account history. *Lundell*, 223 F.3d at 1039. The claim stands.

**B. The $29,750.00 "Sunday Use" Setoff Fails.**

**1. The Debtor consented to the Sunday use.** The Debtor's own declarant swears that the church asked to use the space on Sundays immediately after the Lease was signed and that she "granted permission." (Novak Decl. ¶¶ 5–6.) Use of property with the owner's permission is not a deprivation of anything. Ms. Novak does not claim she charged for that permission, conditioned it on a rent credit, or ever revoked it. Nor could the parties have converted that informal accommodation into a rent reduction without a signed writing. (Lease § 21.11.) The Debtor cannot extend a gratuitous license for ten months and then invoice the licensee for it after filing bankruptcy.

**2. The Lease reserves Sundays to the Landlord.** The Debtor bargained for a private-school premises (Lease §§ 1.11, 11.1) subject to Rules and Regulations that expressly reserve to the Landlord "the right to close and lock the Building on Saturdays, Sundays, and legal holidays." (Ex. D, Rule 12.) The Debtor argues that Rule 12 speaks to locking the Building, not using it. (ECF No. 38 at 2.) But the Lease consistently treats weekends and after-hours as outside the Landlord's obligations: the Landlord's only after-hours duty is to keep "key fob security locks on all building entrances to be locked after business hours." (Lease § 12.) Either way, the point that matters is narrower and fatal to the setoff: the Debtor never had a contractual entitlement to Sunday access that the Landlord was obliged to honor. A tenant cannot recover rent for the loss of a day the Lease allowed the Landlord to close entirely.

**3. The Debtor proves no loss and no measure of damages.** Ms. Novak says only that she *would* use the space on Sundays for outreach, staff meetings, tutoring, and open houses. (Novak Decl. ¶ 8.) She identifies no event that was cancelled, no family turned away, and no dollar lost. Her $595-per-Sunday figure has no stated source — not the Lease, not a market rate, and not any calculation from the Debtor's own rent. And it does not survive its own arithmetic: $595 × 4 is $2,380, not the $2,975 per month she swears to. (*Compare* Novak Decl. ¶ 10 *with* ECF No. 24,

Ex. B, Aug. 5, 2026 letter (Debtor previously claiming $2,380).) The Debtor has asserted three different monthly figures for this same item — $2,875, $2,380, and $2,975. A claim reduction cannot rest on a number the claimant cannot state consistently.

**C. The $40,000.00 "Shared Space" Setoff Fails.**

**1. The 1,284 square feet is a load factor, not a room.** The Debtor's theory is that it pays for 7,667 square feet, so if it cannot use 1,284 of them it should not pay for them. (ECF No. 38 at 3.) That misreads the Lease. The 1,284 square feet is the Debtor's 31.32% pro-rata share of the Building's open and shared areas, added to the 6,383 square feet of Suite 300 to produce rentable square footage: 6,383 + 1,284 = 7,667. (Lease at 1 & Ex. A.) Exhibit A labels the whole as "7,667 RSF including shared open common space." That is how commercial rentable area is ordinarily calculated. It does not grant the Debtor exclusive possession of any particular 1,284 square feet, and nothing in the record shows the Debtor has been denied passage through the lobby, hallways, or stairs to reach and use its suite.

**2. The Lease expressly allows the Landlord to regulate and reduce common areas without any change in rent.** The Landlord "may at any time close any common area," may "diminish the common areas," "shall under no circumstances be liable for any reduction of the common areas," and "no such reduction shall terminate or modify this Lease or Tenant's obligations hereunder." (Ex. D, Parking Rule 13.) The Landlord may also adopt reasonable rules for the operation and safety of the Project. (Lease § 21.1; Ex. D, Rule 23.) That this language appears under the "Parking Rules" caption does not limit it: it speaks to "any common area," and the Lease provides that captions "shall not be considered in the construction or interpretation of any provision hereof." (Lease § 21.10.) The Debtor agreed to those terms. Its remedy for a common-area restriction is the one the Lease provides — none.

**3. The notices enforce the Debtor's own obligations.** The July 20, 2026 notice follows a City of Las Vegas fire inspection and directs the Debtor to clear an obstructed exit stairway. (ECF No. 38 at 10.) The Lease already prohibits the Debtor from obstructing common areas and stairwells, and requires compliance with fire and safety regulations. (Ex. D, Rules 1, 20; Lease §§

11.2–11.3.) The August 25 and September 1 notices prohibit gathering in the lobby, courtyard, and other common rooms. (ECF No. 38 at 11–12.) Requiring a tenant to comply with its own lease and with a city fire inspection is not a compensable taking of leased space.

**4. Every restriction the Debtor documents post-dates the petition.** The claim at issue is for rent that came due between September 2025 and June 2026. The Debtor says the shared space has been restricted for "10 months," but its only evidence is notices dated July 20, August 25, and September 1, 2026 — all after the June 26, 2026 petition. (ECF No. 38 at 10–12.) There is no evidence of any common-area restriction during the months the pre-petition claim covers. Post-petition events cannot support a § 553 setoff against a pre-petition claim, because the debts are not mutual pre-petition obligations. And while recoupment can sometimes cross the petition date, *Newbery*, 95 F.3d at 1399, it still requires the Debtor to prove an actual, quantified loss during the period being reduced. The Debtor has proven none.

**5. The balcony assertion adds nothing.** Ms. Novak asserts that the 697-square-foot balcony is "now restricted." (Novak Decl. ¶ 12.) The floor plan attached to the Lease shows the balcony "included" within the 6,383-square-foot second-floor area — not within the 1,284-square-foot common-area share, as the declaration claims. (Lease at 1 & Ex. A.) The balcony therefore has nothing to do with the $40,000.00 the Debtor computes from the 1,284 figure. No notice in the record mentions the balcony. And "now" is, again, a post-petition assertion with no date, no description of the restriction, and no claimed dollar amount.

**6. The numbers do not compute.** The Debtor seeks "1,284 sq. ft. x 2.55 sq. ft. / 10 months" and says that yields $4,000.00 per month. (ECF No. 38 at 3; Novak Decl. ¶ 13.) But 1,284 × $2.55 is $3,274.20, and over ten months is $32,742.00, not $40,000.00. The $2.55 rate itself appears nowhere in the Lease; base rent works out to about $2.10 per rentable square foot ($16,100.70 ÷ 7,667). The CAM component, moreover, is a pass-through of actual operating expenses (Lease §§ 8–8.3), which the Landlord continued to incur for the common areas regardless of who used them.

**D. The Lease Permits Abatement Only in Three Narrow Circumstances, and None Applies.**

The parties negotiated exactly when rent abates, and they wrote it down. Rent abates for an interruption of Landlord-furnished services lasting more than five consecutive days within the Landlord's control (Lease § 12.1); for casualty damage, in proportion to the part of the Premises rendered unusable (Lease § 16); and for a partial condemnation, apportioned to the part of the Premises that remains usable (Lease § 17). Each provision ties abatement to a specific, objective event affecting the Premises themselves.

The Debtor's claims fit none of them. No service was interrupted, no casualty occurred, and no part of the Premises was condemned. Where the parties specified the circumstances in which rent abates, the Court should not imply a fourth, open-ended category for any use the tenant feels it has lost. The Lease underscores the point: even when the Landlord fails to furnish services, that failure "shall not be deemed or construed as an eviction or relieve Tenant from the performance of any of the obligations imposed upon Tenant by this Lease." (Lease § 12.1.)

Nor does the covenant of quiet enjoyment help the Debtor. It runs to "the Premises" and is expressly "subject to the terms and conditions of the Lease" (Lease § 21.13) — including the Rules and Regulations that reserve to the Landlord control over the common areas and the Building's weekend hours. And the Landlord "shall not be liable to the Tenant for violation of any such Rules and Regulations." (Lease § 21.1.)

Finally, the Debtor remains in possession and continues to operate its school. (Novak Decl. ¶ 3.) A tenant that keeps the premises cannot treat a partial interference as an eviction excusing rent; the Lease's abatement provisions are the exclusive measure, and they are not triggered here.

**E. The Lease Bars Self-Help Offsets and Requires Notice of Any Landlord Default.**

Rent is due "without demand, counterclaim, or set-off." (Lease § 7.) The Landlord is not in default "unless and until it has failed to perform such obligation within thirty (30) days after written notice by Tenant to Landlord specifying wherein Landlord has failed to perform." (Lease § 18.) That notice must be hand-delivered, mailed by registered or certified mail, or sent overnight to the Landlord's designated address. (Lease § 21.6.) Any change to the parties' obligations

requires a signed writing. (Lease § 21.11.) The Debtor's remedies arise only "[u]pon a default by Landlord." (Lease § 19.3.) The Debtor identifies no written notice of default for either alleged deprivation at any time before the petition. It cannot skip the Lease's notice-and-cure process for ten months and then claim the full value of its grievances as a credit.

Finally, to the extent the Debtor seeks to recover money from the Landlord beyond reducing the claim, that relief requires an adversary proceeding, not a claim objection. Fed. R. Bankr. P. 3007(b), 7001.

## V. CONCLUSION

The Debtor concedes the debt and offers no competent evidence to reduce it. Its Sunday-use theory is defeated by its own consent and the Lease's express reservation of Sundays. Its shared-space theory misreads the Lease, ignores the Landlord's reserved right to regulate common areas, and relies entirely on post-petition notices that cannot touch a pre-petition claim. The Landlord respectfully requests that the Court enter an order:

1. Overruling the Objection [ECF No. 38] in its entirety;

2. Allowing the Landlord's Claim No. 3 as filed, without prejudice to the Landlord's right to seek its reasonable attorney fees as the prevailing party under Lease § 21.7; and

3. Granting such other and further relief as the Court deems just and proper.

DATED this 21st day of October, 2026.

SKANE MILLS LLP

*/s/ Elizabeth C. Spaur*

By: ______________________________

Elizabeth A. Skane, Esq. (Bar No. 7181)
eskane@skanemills.com
Sarai L. Brown, Esq. (Bar No. 11067)
sbrown@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
1120 N. Town Center Dr., Ste. 200
Las Vegas, NV 89144
Attorneys for Movant, *The Mountain Church and Precedent Properties, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Skane Mills LLP, and that on the 13th day of August, 2026, I caused a true and correct copy of the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** to be filed and served as follows:

[X] By ECF Notification: Pursuant to the Court's CM/ECF electronic filing system, upon all parties and registered CM/ECF users appearing in this case; and

[X] By United States Mail: By depositing a true and correct copy in the United States Mail, first-class postage prepaid, addressed to the following:

Corey B. Beck, Esq.
The Law Offices of Corey B. Beck, Esq.
425 South Sixth Street
Las Vegas, Nevada 89101
Attorney for the Debtor

Acton Academy Red Rock, LLC
9501 Hillwood Drive, Suite 300
Las Vegas, Nevada 89134
Debtor

Office of the United States Trustee
c/o Carlos R. Hernandez-Vivoni
300 Las Vegas Boulevard South, Suite 4300
Las Vegas, Nevada 89101

Bamboo HR
c/o Caine & Weiner
Attn: Yvette Resendiz
5805 Sepulveda Blvd, 4th FL
Van Nuys, CA 91411

U.S. Small Business Administration,
Office of General Counsel,
312 N. Spring St., 5th Fl.,
Los Angeles, CA 90012

Department of Justice
Office of the U.S. Trustee
600 Las Vegas Blvd.
Las Vegas, NV 89101

Internal Revenue Service
Attn: Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101

Internal Revenue Service
Stop 5028
110 City Parkway
Las Vegas, NV 89106

Department of Motor Vehicles
Records Section
555 Wright Way
Carson City, NV 89711

Nevada DETR
500 E. Third St.
Carson City, NV 89701

Nevada Department of Taxation
555 E. Washington Avenue, Suite 1300
Bankruptcy Section
Las Vegas, NV 89101

Nevada Department of Taxation
Bankruptcy Section
700 E. Warm Springs Rd., Ste. 200
Las Vegas, NV 89119

Nevada Labor Commissioner
3300 W. Sahara Ave., Ste. 225
Las Vegas, NV 89102

Small Business Administration
312 N. Spring St., 5th Fl.
Los Angeles, CA 90012

*/s/ Yesenia Lopez-Lutes*

An employee of Skane Mills LLP