Elizabeth A. Skane, Esq. (Bar No.7181)
eskane@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
SKANE MILLS LLP
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144
(702) 363-2535 / Fax (702) 363-2534

Attorneys for Defendants, PRECEDENT PROPERTIES LLC, and THE MOUNTAIN CHURCH

**UNITED STATES BANRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>ACTON ACADEMY RED ROCK LLC<br><br>Debtor(s) | **CASE NO.: BK-26-13991-mkn**<br><br>**CHAPTER 11**<br><br>**SUPPLEMENTAL RESPONSE OF THE MOUNTAIN CHURCH AND PRECEDENT PROPERTIES, LLC TO DEBTOR'S MONTHLY OPERATING REPORT [ECF 75] AND DECLARATION OF AMY NOVAK IN SUPPORT OF FINANCIAL PROJECTIONS [ECF 79]**<br><br>**Hearing Date: November 9, 2026**<br>**Hearing Time: 9:30 a.m.** |

The Mountain Church and Precedent Properties, LLC (together, "Landlord"), by and through their counsel, submit this Supplemental Response, as permitted by the Court at the October 28, 2026 hearing, to the Debtor's Monthly Operating Report for July 2026 [ECF 75] (the "July MOR") and the Declaration of Amy Novak in Support of Financial Projections [ECF 79] (the "Projections Declaration"). This Response is made in further support of Landlord's Motion for Relief from the Automatic Stay [ECF 24], in further opposition to the Debtor's Motion to Extend Time to Assume or Reject Unexpired Lease [ECF 46] as supplemented [ECF 67], and in further opposition to the Debtor's Objection to Landlord's Claim [ECF 38].

///

## I. INTRODUCTION

The Debtor was given an opportunity to show this Court that it can pay its rent. It responded with two filings that show the opposite.

The **July MOR**, filed on the morning of the October 28 hearing and more than two months late, confirms under penalty of perjury that the Debtor did not pay its bills on time, ended the month overdrawn, and was not current on its U.S. Trustee fees. Its bank statement shows that in the first full month of this case the Debtor paid Landlord **nothing**, while transferring **$11,759.00** by Zelle to "Amy," apparently its 85% principal, and paying an additional **$3,952.69** toward what appear to be Ms. Novak's auto loan and personal credit cards. The same report then certifies that the Debtor had **$0** in unpaid post-petition payables. It still has not filed its August or September reports.

The **Projections Declaration** fares no better. It attaches unsworn charts prepared by a non-declarant bookkeeper, printed from Debtor's counsel's email inbox, built on six weeks of data, and extended into the future by a straight trend line. It projects that a school whose September revenue was roughly $46,000 will generate $189,051 in December, an increase of more than 300%, with no change in enrollment, no stated assumptions, and no line-item budget. The Declaration also contradicts itself on the single fact it relies on: it states the school "currently" has 58 students (¶ 3) and then that "confirmed enrollment" is 67 (¶ 6).

These filings do not provide adequate assurance of future performance under 11 U.S.C. § 365(b)(1)(C). They do not provide adequate protection under § 362(d)(1). They do not show cause to extend the § 365(d)(4) deadline. And they say nothing at all about the merits of the Debtor's claim objection. The relief Landlord requested should be granted.

## II. THE NEW FILINGS

### A. The July MOR [ECF 75]

The July MOR is on Official Form 425C. It is signed by Ms. Novak under 28 U.S.C. § 1746, bears a stated "date report filed" of August 23, 2026, and was entered on the docket at 9:05 a.m. on October 28, 2026. Its contents, and the Chase statement attached to it, show the following:

- **Bills not paid on time.** Line 3 (“Have you paid all of your bills on time?”) is answered “No.” No Exhibit A explanation is attached, as the form requires.
- **U.S. Trustee fees not current.** Line 8 is answered “No.” Again, no Exhibit A is attached.
- **No Landlord payment.** The bank statement lists every July disbursement. None is to Landlord. July rent, due July 1, remained wholly unpaid until August 7, 2026.
- **$0 in post-petition payables.** Line 24 reports total unpaid post-petition debts of **$0**, with no Exhibit E. That cannot be squared with the unpaid July rent, or with the “No” answer on Line 3.
- **Transfers to the principal.** The statement shows ten Zelle payments to “Amy” totaling **$11,759.00**, plus payments on accounts held in Ms. Novak’s individual name to Ford Motor Credit ($2,374.94), American Express ($550.00), Discover ($682.00), Credit One Bank ($271.75), and Wayfair/Citi ($74.00), totaling **$3,952.69**. Line 12 (“Have you . . . transferred any assets . . . to anyone related to the DIP in any way?”) is nevertheless answered “No.”
- **Overdrawn account.** The Debtor began July at −$734.93 and ended at −$10.47. Its lowest daily balance in the month was $0.74.
- **Internal errors.** The form’s opening balance (−$743.93) does not match the bank statement (−$734.93). The form reports disbursements of $34,717.60 on Line 21 and $34,716.90 on Line 33, while the bank statement totals $34,732.66. Line 22 (net cash flow), Line 25 (receivables), and Line 29 (cumulative professional fees) are blank. Line 5 (deposit of all receipts into DIP accounts) is unanswered. Exhibits A through F are not attached.
- **Unexplained receipts.** The Debtor deposited $10,300.00 in cash at two ATMs on July 9 and received $1,500.00 from “Echo Therapy, LLC” on July 1. The source and purpose of these funds are not disclosed.
- **Projections.** Lines 35–37 projected August receipts of $75,000 and disbursements of $70,000. No August MOR has been filed to show whether that projection was met.

As of the filing of this Response, the Debtor has not filed MORs for August 2026 or September 2026.

**B. The Projections Declaration [ECF 79]**

The Projections Declaration consists of two pages of testimony and five pages of charts. Ms. Novak states that "[m]y bookkeeper Done for you Tax, LLC prepared projections" (¶ 4); that she has "personal knowledge of bank statements, ledgers, which were used to formulate projections" (¶ 5); and that she is "optimistic about future revenue" (¶ 7). The charts are printed screenshots. Each bears the header "Inbox Emails (1,014 unread) - becklegal@yahoo.com - Yahoo Mail" and a Yahoo Mail URL in the footer. The data period is August 17 through September 30, 2026. The "3-Month Combined Forecast" states:

| Month | Revenue | Expenses | Profit |
|---|---|---|---|
| September 2026 (actual, per bar chart) | ~$46,000 | ~$36,500 | ~$9,000 |
| October 2026 (forecast) | $117,690 | $98,137 | $19,554 |
| November 2026 (forecast) | $153,371 | $128,782 | $24,589 |
| December 2026 (forecast) | $189,051 | $159,427 | $29,624 |

September figures are approximated from the Debtor's bar chart, which has no data labels. The forecast figures are stated on page 4 of ECF 79.

## III. ARGUMENT

**A. The Projections Are Not Competent Evidence.**

The Federal Rules of Evidence apply in this contested matter. Fed. R. Bankr. P. 9017. A witness may testify only to matters within her personal knowledge. Fed. R. Evid. 602. Ms. Novak does not claim to have prepared the projections or to know how they were prepared. She says her bookkeeper prepared them. No declaration from the bookkeeper is offered. No witness explains the methodology, the inputs, or the assumptions. The charts are out-of-court statements of a non-party offered for their truth, Fed. R. Evid. 801–802, and they are not authenticated as business records of the Debtor. Fed. R. Evid. 803(6), 901. They are screenshots of an email in counsel's inbox.

Ms. Novak's statement that she has personal knowledge of the "bank statements, ledgers" underlying the projections does not cure the problem. The only bank statement in the record is the July statement attached to the July MOR, and the projections do not use July at all. Their data period begins August 17, 2026, seven weeks after the petition date, for reasons the Debtor does not explain. A forecast is an opinion about the future. A lay witness may offer one only if it is rationally based on her own perception, Fed. R. Evid. 701, and a forecast generated by a third party's software is not. Landlord objects to the charts at pages 3 through 7 of ECF 79 and requests that the Court give them no weight.

**B. Even Taken at Face Value, the Projections Are Not Adequate Assurance.**

Adequate assurance of future performance under § 365(b)(1)(C) must rest on more than optimism. Courts look for evidence that the debtor will in fact be able to perform, and projections must be grounded in realistic and reasonable assumptions. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986); *cf. Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (projections must be based on realistic and reasonable assumptions, not speculation). The burden is on the Debtor. On the pending stay motion, the burden is on the Debtor on every issue other than equity. 11 U.S.C. § 362(g)(2). The projections fail on their own terms.

**1. The forecast is a straight line, not a budget.** Month-over-month, forecast revenue rises by exactly $35,681 and then $35,680, and forecast expenses rise by exactly $30,645 each month. The "Average Monthly" figures are simply the November figures. That is what a software trend line produces when it is drawn through two data points (a partial August and September) and extended. The Debtor's own chart labels these lines "Best Fit" and "Forecast." Extended further, the same line would have this school earning more than $400,000 a month by mid-2027. No reasonable business plan works that way, and none is offered.

**2. The forecast cannot be reconciled with enrollment.** The Declaration states the school "currently" has 58 students (¶ 3), the same figure the Debtor has used throughout this case. December's forecast revenue of $189,051 is approximately **$3,260 per student per month**, more than four times the approximately $793 per student implied by September's actual revenue. Even

using the 67-student figure in ¶ 6, the forecast implies about $2,822 per student per month. Nothing in the Declaration identifies a tuition increase, a new revenue source, or anything else that would explain that jump. The Declaration also does not explain why ¶ 3 and ¶ 6 give different enrollment numbers.

**3. "October 2026" is presented as a forecast when it is already history.** The Declaration was signed October 29, 2026. By then the Debtor knew what it had collected and spent in October. It presented a projection instead. Its actual October results, and whether it paid October rent of $20,777.49 when due, remain undisclosed. In fact, neither the October 2026, nor the November 2026 rent payments were made. [ECF 71 and Supplemental Affidavit of Samuel Goulet, filed concurrently with this Response]

**4. There is no line-item budget and no showing that rent is included.** The forecast states only gross revenue, expenses, and profit. It does not show whether full rent and CAM of $20,777.49 per month are included, or any amount for the post-petition shortfall, the pre-petition cure, U.S. Trustee fees, or professional fees. The only rent figure in the exhibits is the unlabeled "Commercial Office – Rent" bar for August 17 through September 30. It appears to reflect a single short payment of roughly $15,250, consistent with the Debtor's short September payment.

**5. The Debtor's own cure proposal contradicts its projections.** If the Debtor truly expected to clear an average of $24,589 per month, it could cure the entire $126,473.25 pre-petition arrearage in roughly five months. Instead, its Supplement [ECF 67] offers $3,000 per month and two $25,000 lump sums deferred to January 31 and August 15, 2027, which totals $77,000 and leaves roughly $49,000 uncured even on its own terms. Either the projections are unreliable or the cure proposal is not made in good faith. Neither supports assumption.

**6. The actual numbers show a business that cannot carry this lease.** The only actual monthly results in the record are July (bank statement) and the bar chart for August–September. July receipts were $35,457.12 against $34,732.66 in disbursements, and that is with **no rent paid**. Had the Debtor paid July rent, it would have ended the month roughly $20,000 overdrawn. September's profit of roughly $9,000 is less than half a month's rent. Every post-petition month in this case has been short or late.

### C. The July MOR Confirms the Default and Raises New Concerns.

A small business debtor must file the periodic financial reports required by 11 U.S.C. § 308 and Fed. R. Bankr. P. 2015(a). 11 U.S.C. § 1116(4). The U.S. Trustee requires those reports monthly, by the 21st day of the following month. The July MOR was approximately two months late. It is incomplete on its face. The August and September reports have not been filed at all. An "unexcused failure to satisfy timely any filing or reporting requirement" and a "failure to pay any fees or charges required under chapter 123 of title 28" are each independent cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(F), (K). They are also strong evidence that the Debtor cannot be relied on to perform the Lease.

More troubling is what the July bank statement shows. In the first full month after filing, while § 365(d)(3) obligated the Debtor to "timely perform" its rent obligation, the Debtor paid Landlord nothing. In the same month it transferred $11,759.00 to "Amy" and paid $3,952.69 on what appear to be Ms. Novak's personal auto loan and credit cards. Together that is **$15,711.69** flowing to or for the benefit of the Debtor's principal. That is roughly three-quarters of a month's rent. If these payments were compensation, they were not disclosed. If they were not compensation, they were transfers to an insider, *see* 11 U.S.C. § 101(31)(B), that the July MOR denied making. Either way, they show that the Debtor chose to pay its principal rather than its Landlord. Landlord reserves all rights with respect to these transfers.

The July MOR also certifies, under penalty of perjury, that the Debtor had **$0** in unpaid post-petition debts at the end of July. On that date the entire July rent was unpaid. The Court cannot accept the Debtor's projections of future performance when its sworn report of past performance omits the very obligation at issue.

### D. The New Filings Change Nothing on the Three Pending Matters.

**Motion for Relief from Stay [ECF 24].** Cause exists under § 362(d)(1) because the Debtor has not timely performed under § 365(d)(3) in any post-petition month, and Landlord is not adequately protected. The July MOR is the Debtor's own sworn confirmation that July rent went unpaid while other money went to its principal. The projections offer no protection at all: they are unsupported, they do not commit any funds to Landlord, and they do not address the existing post-

petition shortfall. In addition, the 120-day period under § 365(d)(4)(A) expired on October 24, 2026, although a brief extension was granted, if the Lease is, ultimately deemed rejected the Debtor must immediately surrender the Premises.

**Motion to Extend [ECF 46, 67].** An extension under § 365(d)(4)(B)(i) requires cause. A debtor that cannot pay current rent, cannot propose a cure within the extension period, and cannot file its operating reports has not shown cause. The projections, even if credited, do not cure the deficiencies identified in Landlord's Opposition [ECF 63]: the Debtor's proposed cure still runs to August 2027, far beyond the maximum extension date of January 22, 2027, and Landlord does not consent to any further extension under § 365(d)(4)(B)(ii).

**Objection to Claim [ECF 38].** Neither new filing addresses the claim objection. The July MOR and the projections contain no evidence of the Sunday-use or common-area offsets, and the Debtor's alleged setoffs remain unsupported for the reasons set out in Landlord's Opposition [ECF 70]. If anything, the July MOR's certification of $0 in post-petition payables while rent went unpaid further undermines the reliability of the Debtor's accounting.

## IV. CONCLUSION

Landlord respectfully requests that the Court:

1. Grant Landlord's Motion for Relief from the Automatic Stay [ECF 24], and waive the 14-day stay under Fed. R. Bankr. P. 4001(a)(4);
2. Deny the Debtor's Motion to Extend [ECF 46, 67] and, to the extent no extension or bridge order was entered before October 24, 2026, determine that the Lease is deemed rejected under § 365(d)(4)(A) and order the Debtor to surrender the Premises immediately;

///

///

///

3. Overrule the Debtor's Objection to Landlord's Claim [ECF 38] and allow Claim No. 3 in full; and
4. Give no weight to the projections attached to ECF 79.

DATED: November 6, 2026

SKANE MILLS LLP

By: */s/ Elizabeth C. Spaur*

Elizabeth A. Skane, Esq. (Bar No.7181)
eskane@skanemills.com
Elizabeth C. Spaur, Esq. (Bar No. 10446)
espaur@skanemills.com
1120 Town Center Drive, Suite 200
Las Vegas, Nevada 89144

Attorneys for Defendants,
PRECEDENT PROPERTIES LLC, and
THE MOUNTAIN CHURCH

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 6, 2026, a true and correct copy of the above and foregoing **SUPPLEMENTAL RESPONSE OF THE MOUNTAIN CHURCH AND PRECEDENT PROPERTIES, LLC TO DEBTOR'S MONTHLY OPERATING REPORT [ECF 75] AND DECLARATION OF AMY NOVAK IN SUPPORT OF FINANCIAL PROJECTIONS [ECF 79]**, was submitted electronically for filing and/or service with the United States Bankruptcy Court, District of Nevada. Electronic Service of the foregoing document shall be made to all parties listed on the Master Service List in accordance with the Electronic Service and Filing Order.

*/s/ Yesenia Lopez-Lutes*

__________________________________
An employee of SKANE MILLS LLP

**SERVICE LIST**

| | |
|---|---|
| Corey B. Beck, Esq.<br>The Law Offices of Corey B. Beck, Esq. 425 South Sixth Street<br>Las Vegas, Nevada 89101<br><br>Acton Academy Red Rock, LLC 9501 Hillwood Drive, Suite 300 Las Vegas, Nevada 89134<br><br>*Attorney for the Debtor* | |
| Office of the United States Trustee<br>c/o Carlos R. Hernandez-Vivoni<br>300 Las Vegas Boulevard South, Suite 4300<br>Las Vegas, Nevada 89101 | Bamboo HR<br>c/o Caine & Weiner<br>Attn: Yvette Resendiz 5805 Sepulveda Blvd, 4th FL Van Nuys, CA 91411 |
| U.S. Small Business Administration, Office of General Counsel,<br>312 N. Spring St., 5th Fl.,<br>Los Angeles, CA 90012 | Department of Justice Office of the U.S. Trustee 600 Las Vegas Blvd.<br>Las Vegas, NV 89101 |
| Internal Revenue Service<br>Attn: Centralized Insolvency Operation P.O. Box 7346<br>Philadelphia, PA 19101 | Internal Revenue Service Stop 5028<br>110 City Parkway<br>Las Vegas, NV 89106 |
| Department of Motor Vehicles Records Section<br>555 Wright Way<br>Carson City, NV 89711 | Nevada DETR<br>500 E. Third St. Carson City, NV 89701 |
| Nevada Department of Taxation<br>555 E. Washington Avenue, Suite 1300<br>Bankruptcy Section<br>Las Vegas, NV 89101 | Nevada Department of Taxation<br>Bankruptcy Section<br>700 E. Warm Springs Rd., Ste. 200<br>Las Vegas, NV 89119 |
| Nevada Labor Commissioner 3300 W. Sahara Ave., Ste. 225 Las Vegas, NV 89102 | Small Business Administration 312 N. Spring St., 5th Fl. Los Angeles, CA 90012 |